GEORGE W. STEM *v.* NASHVILLE INTERURBAN RY.

(*Nashville.* December Term, 1919.)

1. **RAILROADS.** Statutes regulating signals clonstrued liberally.

Shannon's Code, sec. 1574, subsecs. 1, 2, and sections 1575, 1576, requiring signs and signals at crossings, while in derogation of the common law, are also remedial in character, and are therefore entitled to a construction which will not defeat the salutary purposes of their enactment. (*Post, pp.* 503, 504.)

2. **STATUTES.** Construed so as not to impair remedial nature of statute, though in derogation of common law.

The rule that statutes changing the common law should be strictly construed is not invariable, and does not apply when its application would tend to impair the remedial nature of the statute. (*Post, pp.* 503, 504.)

Cases cited and approved: Ill. Cent. R. R. Co. v. Hudson, 136 Tenn., 18; Birmingham Ry., Light & Power Co. v. Ozburn, 4 Ala. App., 399; John v. So. Pac. Co., 196 U. S., 17; St. L., I. M. & S. R. R. Co. v. Conley, 187 Fed., 949; Behrens v. Ill. Cent. R. R. Co., 192 Fed., 581.

Codes cited and construed: Sec. 1574, subsecs. 1 & 2; secs. 1575, 1575 (S.).

3. **RAILROADS.** Regulations of ''railroads'' held applicable to interurban railroad.

Shannon's Code, sec. 1574, subsecs, 1, 2, and sections 1575, 1576, requiring signs and signals for prevention of crossing accidents on "railroad," *held* applicable to an interurban electric railroad line extending 19.3 miles from Nashville to Franklin, only 2.8 miles of which are within the city limits of Nashville; the test of applicability being, not the motive power used, but the real character, business, and operation of the road, and whether the regulations are reasonably susceptible of application. (*Post, pp.* 504, 506.)

Stem v. Interurban Ry.

Cases cited and approved: Malott v. Collinsville, etc., R. Co., 108 Fed., 313; Com. v. Louisville & E. R. Co., 141 Ky., 583; Diebold v. Ky. Traction Co., 117 Ky., 146; L. & N. R. R. Co. v. Anchors, Adm'r, 114 Ala., 492; Simoneau v. Pacific R. Co., 159 Cal., 494; Muskogee E. T. Co. v. Doering, 172 Pac., 793; Hogan v. Railroad, 131 Tenn., 244; Hudson v. S. W. Mo. Railway Co., 173 Mo. App., 611; Campbell v. Greeneville, S. & A. Railway Co., 97 S. C., 383.

4. **RAILROADS. No liability for failure to blow whistle for crossing not designated as public crossing.**

A railroad is not liable for death in crossing accident for failure to blow whistle at a distance of one-fourth of a mile from the crossing, as required by Shannon's Code, sec. 1574, subsec. 2, where such crossing had not been designated as a public road crossing by the required sign by the road overseers, as required by subsection 1. (*Post, pp.* 506, 507.)

5. **RAILROADS. Evidence held to show lookout and employment of every possible means to prevent crossing accident.**

In action for death of automobile passenger in crossing accident, evidence *held* to show that the railroad maintained a proper lookout by locomotive operators and employed every possible means to prevent the accident as required by Shannon's Code, sec. 1574, subsec. 4. (*Post, pp.* 506, 507.)

6. **RAILROADS. Common-law negligence actionable notwithstanding statute.**

A railroad may be liable for death in crossing accident by reason of common-law negligence, notwithstanding there is no statutory liability under Shannon's Code, sec. 1574. Subsecs. 1, 2, 4, prescribing signs, signals, and lookouts for prevention of such accidents. (*Post, pp.* 506, 507.)

Cases cited and approved: Graves v. Railroad, 126 Tenn., 148; Patton v. Railway Co., 89 Tenn., 370; E. T., V. & G. Railway Co. v. Pratt, 85 Tenn., 9; E. T., V. & G. Railway Co. v. Fain, 80 Tenn., 35; Railroad v. Milam, 77 Tenn., 223-226; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415-427; Grippen v. N. Y. C. Railroad Co., 40 N. Y., 34; Thompson v. N. Y. C. & H. R. R. Co., 110 N. Y., 636.

7. **RAILROADS.** Negligent speed at crossing held for jury.

In an action against an interurban railroad for death of automobile occupant, a common-law count alleging operation over an exceedingly dangerous crossing at a high and excessive rate of speed, supported by proof, *held* to present a question of fact for jury. (*Post, pp.* 507, 508.)

Cases cited and approved: Railroad v. Porter, 117 Tenn., 13-20; Bruggeman v. Illinois Cent. R. R. Co., 147 Iowa, 187.

8. **RAILROADS.** Contributory negligende of automobile occupant held for jury.

In an action for the death of an occupant of an automobile in a crossing accident, deceased's contributory negligence *held* a question for jury. (*Post, pp.* 508, 509.)

9. **NEGLIGENCE.** Railroads. Automobile driver's negligence not imputed to guest, but guest cannot rely on driver's vigilance.

Negligence of automobile driver cannot be imputed to his guest, but guest cannot rely upon the care and vigilance of driver to extent of relieving himself from the exercise of reasonable precautions for his own safety at a crossing. (*Post, pp.* 508, 509.)

10 **RAILROADS.** When traveler is required to look and listen at crossings.

To look and listen for cars at crossings is a positive fixed duty when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery, but where, because of conditions not created by or under the control of a traveler, to look and listen will not apprise him of danger, he may be excused from so doing. (*Post, pp.* 508, 509.)

FROM DAVIDSON.

Appeal from the Circuit Court of Davidson County. —Hon. A. G. Rutherford, Judge.

R. H. CROCKETT and J. M. ANDERSON, for appellant.

P. E. Cox and PITTS & McCONNICO, for appellee.

MR. JUSTICE BACHMAN delivered the opinion of the Court.

On the 28th of May, 1916, Mrs. Phemye S. White was killed in a collision between an interrurban car operated by the defendant railway company and an automobile in which she was an occupant, and this suit is to recover for the injury causing her death. The statement of the physical conditions immediately surrounding the accident and the contentions of the parties with reference to the cause of or liability for, the same is most fairly set out in the opinion of the court of civil appeals, and on these particulars and to the extent wherein we concur it is as follows:

"The accident occurred at the junction of the Franklin turnpike and Caldwell lane. Defendant operates an interurban railway between Nashville and Franklin, which, at the point where this accident occurred, runs along the west side of the Franklin pike. Caldwell lane enters the Franklin pike at this point from the west, so that the car tracks lie across the mouth of the lane. The lane terminates at the pike, so that one coming out of the lane has to turn at right angles. The car in which Mrs. White was riding was approaching the pike from the west, and the interurban car was proceeding north from Franklin toward Nashville.

"Beginning about 772 feet west from the pike, Caldwell lane is at quite an elevation, and it then descends rapidly to a point 357 feet from the pike, at which point it is about fourteen feet below the level of the

32—142 Tenn.]

pike and the car tracks at the mouth of the lane, and it continues at this level for 165 feet, and then rises gradually for 215 feet, so that the last ten feet of the rise is in the last thirty-five feet of the approach, making quite a steep ascent right at the pike.

"There are trees and shrubbery on the south side of the lane, and there is a great deal of evidence for and against the contention that they obstructed the vision rendered it difficult, if not impossible, for one driving through the lane toward the pike to ascertain the approach of the interurban cars from the south.

"Mrs. White was riding in an automobile of Mr. J. P. Tyner, and as the guest· of him and his wife. Mr. Tyner was on the right front seat, and was driving the car, his wife was at his left, Mrs. White was immediately behind him with her son on her left, and on one of the collapsible seats in between was a young son of Mr. and Mrs. Tyner.

"At the time of the accident Mrs. Tyner was half turned in her seat and was conversing with Mrs. White and was pointing out to her the home of Mr. Caldwell just north of the lane, so that Mrs. White was looking in that direction and not in the direction from which the interurban car was approaching.

"Plaintiff undertook to prove that Mr. Tyner was exercising reasonable care and was proceeding at a moderate speed and that the occupants of the automobile did not see or hear the interurban car approaching, and had no opportunity to do so, until the automobile was within twenty feet of the track and the interurban was seventy-two or one hundred feet away, and that Mr. Tyner immediately put on his brakes and

stopped his car before the front wheels were on the track, and was trying to back away when the interurban car struck the front end of the automobile.

"On the other hand, defendant's witnesses testified that the motorman discovered the automobile when it was 170 feet away, and at once blew his whistle and applied his air brakes and did everything possible to avert the accident, and that, if the occupants of the automobile had been in the exercise of reasonable care, they would have discovered the approach of the inter-urban in time to have avoided the collision.

"There is a conflict in the evidence with respect to the speed of the automobile. Plaintiff's witnesses say that it was going at a moderate speed or not to exceed ten or fifteen miles an hour. Defendant's witnesses, on the contrary, assert that, when they first saw the automobile from the front platform of the interurban car, the automobile was 170 feet away, and the inter-urban car was going thirty-five or forty miles an hour, and that the automobile not only reached the crossing first, but had come to a stop at the crossing, which would indicate that, when first seen, the automobile was going very much faster than forty miles an hour.

"Defendant's car struck the automobile with great force and swung it around and turned it over and threw Mrs. White some distance against a stone fence rendering her unconscious and inflicting injuries from which she died a few hours later. Mr. Tyner was caught under the automobile, and his wife and son and Mrs. White's son were hurled over the fence into the lawn of M. James E. Caldwell, which is immediately north of the lane.

As the proper determination of the rights and liabilities of the parties hereto necessarily involves the question of the application of our statutory regulation of the operation of railroad trains at crossings, it is necessary that we make the following additional statement of facts:

The Nashville Interurban Railroad is the owner of an electrically operated line of railroad, extending from Nashville through Davidson and Williamson counties to Franklin, a distance of 19.3 miles, 2.8 miles of which are within the city limits of Nashville, over which latter milage its passenger cars are run on the tracks of the Nashville Railway & Light Company, in accordance with the city ordinances regulating the operation of street cars. From the city limits, with the exception of a distance of less than a half mile, its track is situated upon a private right of way owned by the company and is constructed in like manner as and ordinary commercial railroad, suitable for the transportation of passenger and freight cars of standarard guage. The passenger cars are of the well-known interurban type, are propelled by electric motors, and are equipped with air brakes. A compressed air whistle and a gong or bell are provided to give warning of the approach of the car when in operation. The general construction of the cars is similar to that of the ordinary electric street cars, only they are larger and heavier, weighing, empty, about 60,000 pounds. Passenger cars are run over the line of railway according to a published schedule, and outside of the city limits stops are only made at certain designed stations. In addition to passenger traffic, a

regular express business is transacted over the road by the American Express Company, and both *intra* and *inter*-state freight haulage is carried on; trains of three to five freight cars being drawn by an electric locomotive. The road connects with the Tennessee Central Railroad near Nashville, and with the Midland Tennessee Railroad at Franklin, and cars of freight are received from and delivered to these connecting roads in the ordinary course of business, which is done under the regulations of the state railroad Commission and Interstate Commerce Commission, to both of which bodies reports are duly made.

At the conclusion of the hearing in the circuit court the trial judge peremptorily instructed the jury to find in favor of the defendant, stating his reasons as follows:

"There was no duty imposed by statute on the defendant to sound its whistle, etc., upon approaching this public crossing, because it was not officially marked as required by the statute, and there is no evidence that the servants of the defendant failed to sound the whistle and do every thing possible after the automobile appeared on the track.

"Again, if Mrs. White had been looking at all, it would be for the jury to say whether she had exercised reasonable care, but where she is shown positively not to have been making any effort at all to see, then it is a question for the court to say that it was negligence *per se*. Of course, the negligence of Mr. Tyner is not to be imputed to Mrs. White, if she was free from frault; but, where she was not making any effort at all to look out and protect herself in the matter of

going upon that track, it is not a case of Mr. Tyner's negligence being imputed to her, but it is a case of contributory negligence on her part.

"The result is, if this case is based upon the statute, the defendant is not liable, because it was not required to sound its whistle, etc., at that place; and, on the other hand if the case is based upon the common law, then her contributory negligence bars her recovery. The motion is therefore sustained."

It is to be inferred from this statement of the trial judge, made in sustaining the motion for peremptory instructions, that the question of common-law negligence on the part of the defendant was not passed upon, evidently for the reason that he considered the contributory negligence of the deceased a bar to any recovery.

Upon appeal the court of civil appeals, in an able opinion by Special Judge C. C. Trabue, of the Nashville bar, reversed the case, holding, in effect, that the plaintiff was entitled to have the jury pass upon the question of the defendant's liability presented under the second or common-law count of the declaration, and also upon the question of contributory negligence of the deceased. The court of civil appeals was also of the opinion that the statutory precautions were not applicable to the defendant railway.

Addressing ourselves first to the question of the application of our statutory precautions, it is to be seen at the outset that the business of the defendant company is not that of the ordinary street railway usually operating in the cities and their suburbs; the points of dissimilarity are so marked and so far outweigh any items in common that their mere enumer-

ation is sufficient to show the distinction and render inapplicable on the question before us decisions concerning street railroads. Such is our case of *Illinois Central Railroad Co.* v. *Hudson,* 136 Tenn., 18, 188 S. W., 589, 2 A. L. R., 147, where it was held that the stop statute had no application to a crossing between a commercial steam railroad and a street car line, and likewise in *Birmingham Ry. Light & Power Co.* v. *Ozburn,* 4 Ala. App., 399, 56 South, 599, it was held that the Alabama regulations were inapplicable to electric street cars.

Our statutory regulations for the prevention of accidents at grade crossings. (section 1574, Shannon's Code, subsecs. 1 and 2, and sections 1575 and 1576), while in derogation of the common law, are also remedial in character; their avowed intent being to promote the safety and protection of the traveling public at railroad crossings and to prevent accidents thereon. They are therefore entitled to a construction which will not defeat the salutary purposes had in mind by the legislature at the time of their enactment. While it is the rule that statutes changing the common law should receive a strict construction, yet such is not invariable, and particularly is this not true when the application of the rule would tend to impair the remedial nature of the statute. As said by Chief Justice FULLER in the case of *Johnson* v. *Southern Pacific Co.,* 196 U. S., 17, 25 Sup. Ct., 161, 49 L. Ed., 369, in considering the federal Safety Appliance Act:

"The dogma as to the strict construction of statutes in derogation of the common law only amounts to the recognition of a presumption against an intention to

change existing law, and, as there is no doubt of that intention here, the extent of the application of the change demands at least no more rigorous construction than would be applied to penal laws. And, as Chief Justice PARKER remarked conceding that statutes in derogation of the common law are to be construed strictly, 'They are also to be construed sensibly, and with a view to the object aimed at by the legislature.' *Gibson* v. *Jenney*, 15 Mass., 205.''

So it is held, in passing upon the federal Employers' Liability Act (U. S. Comp. St. sections 8657-8665), that although the same is in derogation of the common law and should be strictly construed, yet the construction should be as broad and liberal as possible in order to give effect to the intention of Congress. *St. Louis, I. M. & S. R. Co.* v. *Conley*, 187 Fed., 949, 110 C. C. A., 97; *Behrens* v. *Illinois Central R. R. Co.* (D. C.), 192 Fed., 581.

Applying this same principle of construction to our statutory precautions, we think the same are applicable to the defendant company in the operation of cars over its line. The pertinent inquiry is not one of the means of power employed, but rather what is the real character, business, and operation of the road, investigated in the light of reason for the enactment of the statutes, and whether the regulations prescribed are reasonably susceptible of application. If it is to be held that motive power is the test determining the application to railroads of our statutory precautions, then the mere transition from steam to electricity or gasoline, changes which in common knowledge have been successfully accomplished in the past,

and which in keeping with progress of inventive ingenuity may be foreseen in the future, would completely nullify and render impotent those safeguards vouchsafed the public by wise legislation in force for a period of considerably over half a century, and, if these enactments merit the · rigidity of construction urged upon us, the mechanical development of a day may make obsolete tried and beneficient legislation, and an intelligent progress serve only to mummify existing laws.    See 36 Cyc., 1348,. 1349; · *Malott* v. *Collinsville, etc., R. Co.*, 108 Fed., 313, 47 C. C. A., 345;   *Com.* v. *Louisville & E. R. Co.*, 141 Ky., 583, 133 S. W., 230; *Diebold* v. *Ky. Traction Co.*, 117 Ky., 146, 77 S. W., 674, 63 L. R. A., 639, 111 Am. St. Rep., 230, 4 Ann. Cas., 445;   *L. & N. R. R. Co.* v. *Anchors, Adm'r*, 114 Ala., 492, 22 South., 279, 62 Am. St. Rep., 116; *Simoneau* v. *Pacific R. Co.*, 159 Cal., 494, 115 Pac., 320; *Muskogee E. T. Co.* v. *Doering*, 172 Pac., 793, 2 A. L. R., 94.

In *Hogan* v. *Railroad*, 131 Tenn., 244, 174 S. W., 1118, L. R. A., 1915E, 788, Ann. Cas., 1916C, 1162, the present defendant company was before this court on the question of its duty to transport persons suffering physical disabilities, and it was there held to be a common carrier in the same class with ordinary trunk or commercial railroads.

We are cited to the cases of *Hudson* v. *S. W. Mo. Railway Co.* (July, 1913), '173 Mo. App., 611, 159 S. W., 9, and *Campbell* v. *Greeneville, S. & A. Railway Co.*, 97 S. C., 383, 81 S. E., 676, as holdings contrary to the views we entertain.    An examination of the respective statutes construed in those cases discloses

a direct reference to the use of steam as the motive power within the contemplation of the legislature, and the question of motive power was a determinative factor in the disposition of the cases. There is no such direct reference in our statutes, but, conceding that the same are susceptible of like construction as those of the States above referred to, we cannot agree that motive power is the sole test, and are of opinion as heretofore indicated, that the substantial purposes and manner of operation of the road are the legitimate objects of inquiry.

It is conceded that the crossing where the accident occurred was not one designated in accordance with subsection 1 of section 1574 of the statutes, and it necessarily follows that under the decision of *Graves* v. *Railroad,* 126 Tenn., 148, 148 S. W., 239, no liability can be predicated upon the failure of the defendant company to comply with the requirements of subsection 2 of the statute. It may also be stated in this connection that what we have said with reference to subsections 1 and 2 applies in the present case with equal force to subsection 4 of the statute. The question of construction of this subsection cannot arise as in the case of subsection 2, for the reason that its provisions have been uniformly held to be identical with and declaratory of the common-law duties of railroads in the operation of their trains. *Patton* v. *Railway Co.,* 89 Tenn., 370, 15 S. W., 919, 12 L. R. A., 184, and cases therein approved of; *E. T., V. & G. Railway Co.* v. *Pratt,* 85 Tenn., 9, 1 S. W. 6618, and *E. T. V. & G. Railway Co.* v. *Fain,* 80 Tenn. (12

Lea), 35.  Subsection 4 cannot be made the basis of liability here, as the proof adduced on the hearing discloses a compliance with its provisions.

The foregoing conclusions with reference to statutory liability are in no wise determinative of the question of common-law negligence presented in the second count of the declaration herein.  The case of *Graves* v. *Railroad,* supra, is no authority for, nor can it be construed to authorize, the assumption that a compliance with statutory warning signals at crossings is the full measure of a railroad's obligation at such places.  The scope of that decision is emphatically limited by the language employed to the duties of railroads with respect to the statutory warnings to be employed.  In the opinion it is nowhere intimated that other or different negligence than that of a failure to give statutory notice of the approach of cars at crossings may not exist under given circumstances.  This has been repeatedly held.  See *Railroad* v. *Milam,* 77 Tenn. (9 Lea), 223-226; *Chattanooga Rapid Transit Co.* v. *Walton,* 105 Tenn., 415-427, 58 S. W., 737; *Grippen* v. *N. Y. C. Railroad Co.,* 40 N. Y., 34; *Thompson* v. *N. Y. C. & H. R. R. Co.,* 110 N. Y., 636, 17 N. E., 690;  22 R. C. L., section 226, p. 998.

It is alleged in the common-law count of the declaration that the defendant was operating its car over an exceedingly dangerous crossing at a high and excessive rate of speed.  This allegation, supported by proof, presents a question of fact to be determined by the jury.  *Railriad* v. *Milan,* supra; *Chattanooga Rapid Transit Co.* v. *Walton,* supra; *Railroad* v. *Porter,* 117 Tenn., 13-20, 94 S. W., 666, 10 Ann. Cas., 789;

*Bruggeman* v. *Illinois Central Railroad Co.*, 147 Iowa, 187, 123 N. W., 1007, Ann. Cas., 1912B, 876; 22 R. C. L., section 242, p. 1011.

We, of course, do not mean to say that liability can be based upon rate of speed alone, but in connection with the allegations of a dangerous crossing, unless there is an absence of substantiating proof, which is not the case here, it does not lie within the province of the court to determine the question. Whether there is any evidence is to be determined by the court; the question of the preponderance of the evidence is primarily for the jury. With reference to the contributory negligence of the deceased, we are of opinion that this issue should also have been submitted to the jury. That the negligence of the driver of the automobile cannot be imputed to the deceased is too well settled to require the citation of authority. It is likewise true that one occupying a vehicle as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precautions for his own safety; this obligation is a continuing personal one. It is shown in the evidence here that at the time of and immediately prior to the collision the deceased was exercising no care to ascertain the existence of the railway track or the approach of the car. This would, nothing else appearing, preclude any right of recovery by her administrator. There is, however, evidence in the record tending to show that, on account of obstructions along the route traversed by the automobile, to have looked and listened would not have warned her of peril. To look and listen for cars at crossings

Stem v. Interurban Ry.

is a positive, fixed duty, when by such precautions they may be seen or heard, and in such cases a failure of observance will bar recovery. Where, however, in exceptional cases, because of conditions not created by, nor under the control of a traveler, these precautions would not apprise one of danger, their exercise may be excused. The case will be reversed and remanded for a hearing in accordance with this opinion.