LOUISVILLE & NASHVILLE RAILROAD COMPANY v. L. M. ROSS AND D. B. ANDERSON COMPANY.

Middle Section.   March 20, 1926.

No petition for Certiorari was filed.

1. **Railroads.   Where a railroad fails to observe the stautory precautions it is responsible for all damages occasioned by an accident.**
   Where a railroad fails to observe the statutory precautions it is made responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur.

2. **Railroads.   Evidence.   Burden is on plaintiff to show he was an obstruction on the track when accident occurred.**
   In an action to recover on a statutory count for injuries caused by an accident at a railroad crossing, held the burden is on the plaintiff to show that the injuries were caused as result of the collision while he was an obstruction on the track, and then the burden of proof shifts to the defendant to show the observance of the statutory precautions.

3. **Railroads.   Railroads not required to observe statutory precautions where crossing not marked.**
   Where the crossing has not been designated by the required statutory signals as provided in subsection 1 of Shannon's Code 1574, then no liability can be predicated upon the failure of the defendant Company to comply with the requirements of subsection 2 of the statute, and the burden of proof is on the plaintiff to show that the crossing has been thus designated.

4. **Railroads. Failure of railroad to observe the statute renders it liable though not the proximate cause of the injury.**

A failure to observe the statute, though not the proximate cause of the injury, renders the company liable although it may appear that the accident or collision would have occurred had the precautions been observed, and even though the negligence of the plaintiff was the direct and proximate cause.

5. **Railroads. Railroads not required to observe statutory precautions in order named.**

A railroad is not required to observe the precautions in the order named · in the statute, but must use the most effective.

6. **Railroads. Evidence. Whether or not the engineer observes proper precautions is a question for the jury.**

The question of whether the engineer should have observed any particular precaution first, where he did not have time to observe all, is a question for the jury where reasonable minds may differ as to which should be observed first.

7. **Railroads. Railroads not liable for failure to observe statutory precautions where there is no time after obstruction appears on track.**

If the person, animal or other obstruction appears so suddenly on the track that there is no time to comply with the statute, then the defendant company is not liable, presupposing of course, that the company is in readiness to comply, and is actually complying so far as a lookout ahead is concerned. If there is time to comply with. only a part of the statute, then that part should be complied with, which in the exercise of ordinary care would be the most efficient means to prevent the accident.

8. **Railroads. Evidence.**

In an action to recover damages for personal injuries and for damages to an automobile, evidence held to show that the railroad complied with the statutory precautions so far as possible and peremptory instructions on the statutory counts should have been given.

9. **Railroads. Statutory precautions do not exclude common-law obligations.**

The statutory precautions required of railroads do not exclude the common-law obligation of diligence and care. The statutes are not the full measure of the railroads' duty.

10.· **Railroads. Negligence. Common-law duty.**

Under the common law it is the duty of a railroad company's servants on the engine to keep a lookout ahead, and also to have reasonable appliances. It is also the duty of such servants on the appearance of an obstruction on the track, to use their utmost endeavors to prevent a collision. It is also their duty to see what could be seen by a person of good eyesight.

11. **Railroads. Negligence. Obstruction of the view cannot be an independent ground of recovery.**

In an action to recover from a railroad where the evidence showed that there was an obstruction of the view at the place of the accident, held an obstruction of the view, however caused, is not of itself, independent evidence of negligence, but may impose upon the company the duty of increased care and watchfulness in running trains at that point, or of giving warning signals, and may properly be considered upon the question of the proper degree of care and vigilance. It cannot be an independent ground of recovery.

12. **Railroads. Negligence. Rate of speed of train may be considered in determining negligence.**

It cannot be said that a railroad is guilty of negligence simply on account of the rate of speed of its train at the time of the accident, but this

fact can be taken in connection with other facts, such as a dangerous crossing and failure to keep a lookout ahead and to give notice of its approach to a crossing.

13. **Railroads. No common law duty on railroad to attempt to stop a train merely because they see a person approaching the track.**

Ordinarily, it is not incumbent upon those in charge of the locomotive to give warning or attempt to stop the train merely because they see some one walking towards the railroad track with a view of crossing same. Warning and an effort to stop is not required unless said person is seen approaching the track in such a way as to indicate that a collision is imminent.

14. **Railroads. Negligence. Railroad is guilty of negligence where train approaches point of known danger and fails to give warning.**

It is the duty of the railroad company at common law, to give notice of the approach of trains at all points of known or reasonably apprehended danger, and failure to do so will render the company liable where such failure was the proximate cause of the injury to one not guilty of contributory negligence.

15. **Negligence. Evidence held sufficient to show railroad negligent.**

In an action to recover damages for personal injuries and property the evidence held sufficient to show the railroad guilty of negligence.

16. **Railroads. Ordinarily there is an absolute duty on the party crossing a railroad track to look and listen.**

Ordinarily it is an absolute duty to look and listen, but not always. It is his duty to look, and if he cannot see, then he should listen. If he cannot see or hear, it is his duty to stop if by stopping he can the better look and listen. To look and listen for cars is a positive fixed duty, when by such precautions they may be seen or heard and in such cases, the failure of observance will bar recovery. Where, however, in exceptional cases because of conditions not created by nor under the control of the traveler, this precaution would not apprise one of danger, their exercise may be excused.

17. **Railroads. Evidence. Held to make a case for the jury.**

In an action to recover damages for personal injury and to property where the evidence showed that the train was coasting noiselessly down hill and the party approached the track slowly and heard nothing, and his view was obstructed until almost entering upon the track, held that the question became one for the jury, as to whether he exercised the degree of care required.

18. **Trial. Instructions.**

An instruction given on a common-law count telling the jury that as soon as the automobile came where it could be seen approaching the track it was the duty of the employee in charge of a train to blow the whistle, put on the brakes and do everything possible to avoid the accident, held, bad as the common law imposed no such duty, unless it was apparent that a collision was imminent.

Appeal in Error from Circuit Court, Sumner County; Hon. J. D. G. Morton, Judge.

Reversed and remanded.

Keeble & Seay, of Nashville, for plaintiff in error, Railroad.

Baskerville & McGlothlin, and J. S. Collier, all of Gallatin, for defendants in error, Ross et al.

CROWNOVER, J. These actions were for damages caused by a collision of the plaintiff's automobile with the defendant's freight train at a public crossing, and although separate actions, they were

by agreement tried together in the court below, and will be decided in one opinion. For convenience the parties will be designated plaintiff and defendant as in the court below.

The first was an action by plaintiff, Ross, to recover damages for personal injuries caused by said collision, and the second was an action by plaintiff, D. B. Anderson Company, a corporation, for damages done to its Ford coupe, that was being driven by Ross at the time of the accident, and which was demolished by the collision.

At the conclusion of the evidence, the court overruled the defendant's motion for peremptory instructions, and the jury returned separate verdicts—one in favor of Ross for $2,500 damages and the other in favor of D. B. Anderson Company for $400 damages. Motion for new trials were overruled, and the defendant appealed in error to this court.

The declaration in each action contained four counts, one being a statutory count alleging the non-observance of the statutory precautions, Shannon's Code, section 1574, subsection 4, in that the defendant, at the time of the accident, did not have on its locomotive a look-out ahead, and when the automobile became an obstruction, the alarm whistle was not sounded, nor the brakes put down and every possible means employed to stop the train and prevent the accident.

The other three counts were common-law counts but the second count that charged a failure to grade the crossing up to a level with the rails, was withdrawn by the plaintiffs, and the court refused to submit the issues of the fourth count to the jury, as that count was a repetition of the first count; hence, it is not necessary to further consider those two counts.

The common-law count charged in substance, that the crossing was dangerous, as plaintiff's view was obstructed by an embankment of a cut, trees and weeds, so that he could not see the train's approach to the crossing from the East, and that the defendant's engine and train were being coasted down grade at a dangerously high rate of speed without notice being given of its approach, or the taking of necessary precautions to warn travelers along the highway.

The first two assignments of error, are that there is no evidence to support the verdict, and the third and fourth assignments are that the court erred in overruling the motions for directed verdicts; hence, these assignments go to the same propositions, and necessitate a review of the facts, as the plaintiff in error insists that it observed both the statutory and common-law duties.

The facts necessary to be considered are these: The crossing where the collision occurred is known as Livar's crossing and is about two miles south of Gallatin. It is much used by the public on ac-

count of the fact that the bridge on the Gallatin Pike had been closed for several months for repairs. At this public crossing, the road is north and south, while the railroad is east and west, and they cross at right angles. The track enters the cut immediately east of the crossing, the embankments of which are fourteen feet at the highest point, and the track east towards Gallatin is straight for three hundred feet, then it curves to the left. The road on the south approaches said crossing down grade. At a point three hundred feet south of said crossing, the said road is sixteen feet higher than the track, with a gradual decline north down to the crossing, and is practically level at the crossing, but said road just south of said crossing makes a sharp curve to the right just before going on to the crossing. There was no proof that the public crossing had been designated as such by the required statutory signals.

The D. B. Anderson Company was a corporation in the insurance business at Gallatin, Tennessee, and owned the automobile that was being driven by Ross, who was an officer of the Company, and who was driving alone from Nashville to Gallatin by way of this crossing, when the collision occurred with defendant's south-bound freight train going from Gallatin to Nashville. The collision occurred at about 5 P. M. in July, 1923.

The plaintiff's insist, and introduced proof that tended to show, that the plaintiff, Ross, had cut off the gas in the automobile, and coasted noiselessly down the hill at the rate of about five miles per hour on approaching the crossing; that he looked and listened as he approached, but neither saw nor heard any indication of a train; that his view of the track as he approached the crossing was obstructed by a fence, bushes, weeds and Johnson grass that grew on the sides and top of the embankment of said cut, and that when he arrived at a point where he could see up the track, the front of his automobile was within five or six feet of the track, while he (in the seat) was about six feet further back; that at this point he looked up the track and saw defendant's freight train in the cut about one hundred feet away, approaching rapidly, noiselessly coasting down grade at a rate of from twenty-five to thirty-five miles an hour; that he immediately applied his brakes and attempted to stop the automobile, but it ran on and stopped near the first rail, within striking distance; and that said automobile was struck by the pilot and bumper of the engine, and was hurled a distance of from twenty to twenty-five feet, turned upside down and demolished. Plaintiff, Ross was thrown out and sustained injuries.

Plaintiff, Ross, admitted that he was somewhat familiar with the crossing, had passed over it several times prior to the accident, and had opportunity to observe the track, cut and trains approaching, and that he knew that a train was liable to pass at any time,

but that the weeds and Johnson grass had grown up to some extent since he had been there. He further admitted that the automobile could be stopped within three or four feet, and that if he had stopped at the place where he first saw the approaching train, the collision would not have happened.

But he insisted that the train approached said crossing without noise and without sounding the bell or whistle, and without giving any notice of its approach, as the steam had been cut off while coasting down grade; and that if the whistle had been blown or notice of its approach had been otherwise given, he would have stopped and the collision would have been avoided.

While the defendant insisted and introduced testimony that the whistle had been blown and the bell was rung as it approached said crossing; that the engineer was sitting in his place in the cab on the right-hand side of the engine, and was on the look-out ahead at the time, but did not see the automobile on account of the boiler and smoke stack, but could see an object on the track about seventy feet ahead of the engine; that the head brakeman was on the fireman's side, on the left side of the engine, looking ahead, and saw the automobile "a little way" from the track when the engine was within about one hundred feet of the crossing, and immediately yelled to the engineer "whoa," which was a distress signal and indicated to the engineer that he must immediately stop the train. The engineer thought that the machinery was out of order and he immediately applied the emergency brakes and by the time they took effect, the collision occurred as it took two or three seconds for the brakes to take effect. The alarm whistle was not sounded, as the notice given by the brakeman did not indicate that an object was about to appear on the track as an obstruction. From this it is insisted by the railroad that it performed all its statutory and common-law duties, and that it is, therefore, not liable as it did all that was within its power to stop the train and to avoid the collision.

Now with respect to the statutory count; where the railroad fails to observe the statutory precautions it is made responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur. The burden is on the plaintiff to show that the injuries were caused as result of the collision while he was an obstruction on the track, and then the burden of proof shifts to the defendant to show the observance of the statutory precautions.

Where the crossing has not been designated by the required statutory signals as provided in sub-section 1 of Shannon's Code, section 1574, then no liability can be predicated upon the failure of the defendant Company to comply with the requirements of sub-section 2 of the statute, and the burden of proof is on the plaintiff to

show that the crossing had been thus designated. (See Graves v. Railroad, 126 Tenn., 148; Stem v. Interurban Railway, 142 Tenn., 506). But as we understand it, the plaintiffs are not relying upon sub-section 2, and are relying solely on sub-section 4, in so far as the statutory precautions are concerned.

A failure to observe the statute, though not the proximate cause of the injury, renders the Company liable, although it may appear that the accident or collision would have occurred had the precautions been observed, and even though the negligence of the plaintiff was the direct and proximate cause. (See Artenberry v. Railway, 103 Tenn., 266; Railroad v. Davis, 104 Tenn., 442; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415).

It is insisted that the Railroad was negligent in that it did not have any one upon the engine on the look-out ahead, and did not do everything possible to avert the accident; in that, the engineer did not see the automobile at all before the accident happened, although he could have seen it had he been looking out and attending to his duties; that the head brakeman did not see the automobile as soon as he should have, and that after he saw the automobile he gave the engineer the wrong signal to stop instead of informing the engineer that an obstruction was on the track, and that the engineer did not apply the brakes as soon as he should after having received notice, and that the alarm whistle was not sounded at all. The insistence being that the futility of attempting to stop the train in that distance was apparent, and that the engineer should have sounded the alarm whistle so as to have notified the plaintiff of its approach, and that the question of whether the engineer should have observed any particular precaution first, where he could not observe all of them, was for the jury.

The railroad was not required to observe the precautions in the order named in the statute but must use the most affective. (Railroad v. Scott, 87 Tenn., 494). And, the question of whether the engineer should have observed any particular precaution first, where he did not have time to observe all, is a question for the jury where reasonable minds may differ as to which should be observed first. (See Railroad v. Morgan, 132 Tenn., page 1; Railroad v. Scott, 87 Tenn., 498, 501-2; Railroad v. Brooks, 125 Tenn., 260; Railroad v. Foster, 88 Tenn., 687). But the railroad was not required to observe the statutory precautions until the object became an obstruction, that is, until it was actually on the track or within striking distance. (Preslar v. Railroad, 135 Tenn. 45).

If the person, animal or other obstruction appears so suddenly on the track that there is no time to comply with the statute, then the defendant company is not liable. Presupposing of course, that the Company is in readiness to comply, and is actually complying

so far as a lookout ahead is concerned. If there is time to comply with only a part of the statute, then that part should be complied with, which in the exercise of ordinary care would be the most efficient means to prevent the accident. (See Railroad v. Morgan, 132 Tenn., 12-13; Artenberry v. Railroad, 103 Tenn., 266; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415).

The main insistence being that the defendant had no one on the lookout ahead and failed to sound its alarm whistle, and that the question of whether it should have first applied the brakes or have sounded the alarm whistle, was a question for the jury. Ordinarily this is true, but the question is one for the jury only where reasonable minds may differ as to which should be observed first.

But in this instance the automobile came within striking distance of the engine not more than an instant of time before the collision. The brakeman was on the lookout ahead and saw the automobile before it became an obstruction, and yelled to the engineer. Only one lookout is required. The uncontroverted proof is that it took two or three seconds for the brakes to take effect, and by that time the collision occurred. The engineer did not have time to comply with all the precautions, and it is a question of whether he should have applied the emergency brakes or have blown the whistle. From the evidence, we do not think that reasonable minds would have differed on the proposition, as plaintiff, Ross, was already aware of the approach of the train at that time, and sounding the whistle would have done him no good. And there can be no legal doubt as to the conclusion to be drawn from the whole evidence; hence, it results that we hold that the defendant complied with the statutory precautions so far as possible, and that the trial judge should have sustained the motion for a peremptory insrtuction on this count.

Now with respect to the common-law count. The obligations, rights and duties of railroads and travelers upon highway crossings are mutual; neither has an exclusive right of passage, but the railroad has precedence. The railroad has the right to use its tracks and the public have the right to use the crossing, and each should act with due regard for the rights of the other. Both parties are charged with a mutual duty of keeping a careful lookout for danger, and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty, and must be commensurate with the risk and danger involved; the greater the danger, the greater the care required of both.

The statutory precautions do not exclude the common law obligations of diligence and care. The statutes are not the full measure of the railroad's duty. (See Stem v. Interurban Railroad, 142 Tenn.,

507; 2 Thompson on Negligence (2 Ed.), sec. 1555). Under the common law it is the duty of a railroad company's servants on the engine to keep a lookout ahead, and also to have reasonable appliances. It is also the duty of such servants on the appearance of an obstruction on the track, to use their utmost endeavors to prevent a collision. It is also their duty to see what could be seen by a person of good eyesight. (See Chattanooga Station Co. v. Harper, 138 Tenn., 579).

It is insisted that the railroad was guilty of common law negligence in that, the crossing was much used by the public and was a dangerous crossing; that the plaintiff Ross's view was obstructed by a fence, bushes, weeds and Johnson grass that grew on top of the embankment of the cut, and that the defendant knew of said condition and that said train approached said crossing with no one on the lookout ahead, and that the engineer did not see the automobile at all, while the head brakeman did not see the automobile as soon as it appeared from behind the embankment and obstructions; that those on the engine on the lookout could have seen the automobile when it was within from fifteen to eighteen feet of the track, while the plaintiff, Ross, seated in his car, could not see the train until the front of the car was within five or six feet of the track, and that under these conditions, the defendant gave no notice of the approach of said train, and that said train approached said crossing coasting noiselessly down grade at a high rate of speed and that no bell or whistle was sounded and no notice was given to warn plaintiff of its approach.

An obstruction of the view, however caused, is not of itself, independent evidence of negligence, but may impose upon the Company the duty of increased care and watchfulness in running trains at that point, or of giving warning signals, and may properly be considered upon the question of the proper degree of care and vigilance. It cannot be an independent ground of recovery. (See Railroad v. Witherspoon, 4 Cates, 130; 3 Elliott on Railroads (3 Ed.), sec. 1663; 22 R.C.L. 995).

It cannot be said that a railroad is guilty of negligence simply on account of the rate of speed of its train at the time of the accident, but this fact can be taken in connection with other facts, such as a dangerous crossing and failure to keep a lookout ahead and to give notice of its approach to a crossing. (See Stem v. Interurban Railway, 142 Tenn., 508; 22 R.C.L., 1012-13).

Ordinarily, "It is not incumbent upon those in charge of the locomotive to give warning or attempt to stop the train merely because they see some one walking towards the railroad track with a view of crossing same. Warning and an effort to stop is not required unless said person is seen approaching the track in such a way as to in-

dicate that a collision is imminent. 'But a railroad company is not guilty of negligence if it fails to take steps to stop its train whenever a wagon is seen approaching its track, if so it would derange all connections and impede travel.' Railway Co. v. Howard, 90 Tenn., 144-149.'' See, Opinion of the Supreme Court in the case of Samuel Lamance, administrator v. Southern Railway Co., et al., Roane County Law, filed on December 7, 1923, at Knoxville; Thompson on Negligence, 1601.

However, in situations as presented in the instant cases, where the crossings are much frequented and are dangerous, the traveller's view being obstructed until he is almost upon the track and where the train approaches at a rapid rate of speed, noiselessly and without giving notice of its approach, under these circumstances, those operating the train should have reasonable apprehension that a traveller would be likely to approach the track at such crossings without knowledge of the trains approach; but, the question of whether the traveller's approach under such circumstances indicated that a collision was imminent, is one for the jury.

"It is clearly the duty of the Railroad Company at common law to give notice of the approach of trains at all points of known or reasonably apprehended danger, and failure to do so will render the Company liable where such failure was the proximate cause of the injury to one not guilty of contributory negligence.'' See 22 R.C.L., 952, sec. 191 and p. 997.

"After an examination of the authorities cited, we think that the true rule deducible therefrom, is that if the place is dangerous, then the Company is onerated with the duty of warning travellers on the highways of the approach of its trains, but whether the place, as a matter of fact, is dangerous, is a question for the determination of the jury.'' See Railroad v. Sawyer, 114 Tenn., 99.

The point is, that if danger might be reasonably apprehended under the circumstances, it was the duty of the Company to give some notice or warning in order that a collision may be avoided. Where there is no reasonable apprehension of danger, no notice is required. But if danger to the person or property of others may be reasonably apprehended, or is likely to result from the running of its trains without giving such notice, then it is the duty of the Company to give warning and its omission is negligence. See 2 Thompson on Negligence, secs. 1596-1597.

It is insisted that as soon as the head brakeman saw plaintiff he gave the wrong signal—yelled ''whoa,'' which did not convey information to the engineer that they were about to strike an object, but conveyed information that the machinery was out of order; and hence, no bell or whistle was sounded. It is proven beyond con-

troversy that as soon as the brakeman saw the automobile he notified the engineer, who immediately applied the emergency brakes but did not have time to comply in other respects. From the evidence, it is clear that plaintiff, Ross, saw the train at the time that the brakeman saw the automobile, and therefore, Ross, was aware of the approach of the train, as he says that he did everything possible to stop his automobile. At common law, where a party knows of the approach of a train, the railroad incurs no liability for its failure to sound the whistle or bell. See Railroad v. Lovejoy, 138 Tenn., 492.

But, taking all the evidence all together, we think that under the circumstances the railroad, was negligent in not observing its common-law duty, by keeping a lookout ahead who was vigilant, as the proof tended to show that those upon the lookout could have seen the automobile when it was from fifteen to eighteen feet away from the track, and they were negligent in approaching a crossing without giving notice of its approach, as the proof tended to show that the crossing was dangerous. It had knowledge, or should have had knowledge, that the traveler's view was obstructed until near the track and that said crossing was much used by the public, so it should have anticipated that a traveller might come upon the crossing at any moment.

On the other hand it was the duty of plaintiff, Ross, to constantly look and listen. If his failure contributed proximately to his injury, then he cannot recover though the railroad was also guilty of negligence. Chattanooga Station Co. v. Harper, 138 Tenn., 581.

It is insisted that the plaintiff drove his car down hill to within striking distance of the tracks at the crossing, without stopping, looking or listening, with which location he was familiar, and where he might have expected a train at any moment.

While the plaintiffs insist that on going down the hill plaintiff, Ross, cut off the gas and coasted noiselessly down at the rate of five miles an hour; that he listened but did not hear the train as it was also coasting down hill, and that the said train did not sound a whistle or bell, or otherwise make known its approach; that he looked, while going at this rate of speed, but his view was obstructed by the embankment of the cut, weeds, Johnson grass and bushes, and that he looked just as soon as he could see, but that he could not see until he had reached a point where the front of his automobile was within five or six feet of the track, at which place he saw the defendant's train, about one hundred feet away, rapidly approaching at the rate of thirty to thirty-five miles an hour, and that he immediately applied his brakes, which were in good condition, and stopped his automobile before it reached the rail, but was within striking distance of the train, and was hit. He insists that if the train had sounded

the whistle or had otherwise notified him of its approach, he would have stopped at a safe distance. He did not stop to look and listen.

Ordinarily, it is an absolute duty to look and listen, but not always. It is his duty to look, and if he cannot see, then he should listen. If he cannot see or hear, it is his duty to stop if by stopping he can the better look and listen. To look and listen for cars is a positive fixed duty, when by such precautions they may be seen or heard and in such cases, the failure of observance will bar recovery. Where, however, in exceptional cases because of conditions not created by nor under the control of the traveler, this precaution would not apprise one of danger, their exercise may be excused. See Stem v. Interurban Railway Co., 142 Tenn., 508-9; Railroad v. Morgan, 132 Tenn., 17-18.

The point in the exceptional cases, is that conditions arise not created by or under the control of the traveler, where an ordinary prudent person by reason of this condition could not and would not anticipate the danger.

"In this connection much stress is laid upon the obligation to stop, look, and listen before going over the tracks of a railroad. The evidence in this case is that the deceased parties did stop. They were compelled to do so, awaiting the passage of the freight train. These obligations to stop and look and listen must receive a reasonable construction and interpretation. It cannot be required that a person shall always stop or always look or always listen, but the requirement is that these precautions shall be so observed as to free the party from all negligence. A party cannot be required, for instance, to stop or listen when, on approaching a crossing, he can see a reasonable distance up and down the track so as to be certain he runs no risk in crossing. He cannot be required to listen if he is deaf or the noise of the surroundings is so great as to preclude all possibility of hearing.

"He cannot be held liable for negligence in failing to look when his view is absolutely cut off or so obstructed as that he can see nothing until he is entering or has entered on the track. A person cannot be deemed negligent because he fails to stop at each track when there is a series of parallel tracks so near to each other that he can see as effectually by stopping once or by not stopping at all as by making continuous or repeated stops. So, too, it could not be deemed negligence for a traveler to fail to observe any of these precautions in cases where the railroad has a flagman at a crossing and he gives the signal for crossing in safety, nor where, in other ways, the railroad throws him off his guard by failing to exercise legal requirements and usual observances and ordinary caution, and thus leads him into real

danger under an apparent aspect of safety." See Railroad v. Dies, 14 Pick., 663-4; Railroad v. Satterwhite, 112 Tenn. 185; Patton v. Railroad, 5 Pick., 371.

"From the authorities above cited, it is perfectly clear that it is the duty of a traveler approaching a railroad with a view to crossing or with a view to going upon the track, to look and listen, and this duty is a continuing one so long as he remains upon the track and unless there is something in the circumstances surrounding him to excuse him from performing his legal duty a failure on his part to perform it is such contributory negligence as will defeat his right of action at common law. As for instance, he is not bound to look where his view is obstructed, nor is he bound to listen where, on account of deafness or unusual noise from other sources, he is unable to hear." See Adcock v. Railroad, 3 Hig., 138.

But where he did look and listen, and neither sees nor hears any indication of a moving train, he cannot be charged with negligence in assuming there was none near enough to make the crossing dangerous; and the absence of such warning is a circumstance to be taken into consideration by the jury in determining whether he did exercise the degree of care required. (22 R.C.L., 1041, secs. 272-3; 2 Thompson on Negligence, 1602).

Under a state of facts somewhat similar to the instant case, it was held that the question of whether the party exercised ordinary care for his safety was one for the jury. See Stem v. Interurban Railway Co., 142 Tenn., 507 and 8; 221 S. W. 192.

When a traveller on a country highway comes to a railroad crossing with which he is familiar, knowing that a train is about due at that point and liable to pass at any time, it becomes his duty, as an act of ordinary prudence, to look and listen for its approach; and if his sense of sight is unavailing because of obstructions to the view, and his sense of hearing unavailing because of preventing noises, it becomes his duty, as a further act of ordinary prudence, to stop at a safe distance, if by stopping it would enable him the better to look and listen before entering upon the crossing; and in such a case, if by stopping and by using ordinary care he can see or hear the approaching train, but fails to do so, his negligence in such respect should be declared as a matter of law, and not left to the determination of a jury as a question of fact.

But as above stated the obligation to stop and look and listen must receive a reasonable construction. Where his view is obstructed and there are no preventing noises, and he listens but hears no sound of the moving train, which is itself approaching noiselessly without observing the precautions, then the question becomes one that should be submitted to the jury, and all these circumstances should be

taken into consideration by the jury in determining whether he did exercise the degree of care required.   See 2 Thompson on Negligence, 1645, 1654.

"When the facts of the particular case are disputable and of such a character that different minds might reasonably draw different conclusions therefrom, the question of what is the proximate cause of an injury, is one for the jury; but when the facts are undisputed and are susceptible of but one inference, the question is one of law for the court."   See Moody v. Gulf Refining Co., 142 Tenn., 280; Fairbanks-Morse Co. v. Gambill, 142 Tenn., 633, 22. R. C. L., 148, secs. 31 and 32.

Where there is a controversy in respect of facts, upon which the defense of contributory negligence is predicated, the question should be submitted to the jury.   See Hines v. Partridge, 144 Tenn., 219; 22 R. C. L. 1027, sec. 259.

Of course, in passing on a motion for peremptory instructions and upon an assignment of error that there is no evidence to support the verdict, the court must take the most favorable view of the evidence appearing in the record supporting the rights asserted by the party against whom the motion is made, or against whom the assignment is directed.

Hence, we are of the opinion that the court did not err in submitting the issues of the common-law count to the jury.   It results that we hold that the motions for peremptory instructions were properly overruled by the trial judge as the defendant did not ask that the court direct verdicts on each count separately; and, there being some material evidence to sustain the verdict, the first four assignments must be overruled.

The assignments numbers five to eight, inclusive, are directed as the excessiveness of the verdicts.   These assignments will be hereinafter treated all together, after we have disposed of the other assignments.

The ninth assignment of error complains at a portion of the charge, where the court told the jury that it was the duty of employees in charge of the train to blow the whistle, put on the brakes and do everything possible to stop the train and avoid the accident "as soon as the automobile came where it could be seen approaching the track," and that its failure to do this was negligence unless the automobile appeared so suddenly or so close that it was impossible to do any of these things.

This part of the charge was given in connection with the instructions on the common-law count.   Under the common law no such duty was imposed on the railroad unless the person was seen approaching the track in such a way or under such circumstances as to indicate that he was probably unaware of the approach of the train, and that a collision was imminent.

By this charge the court took these questions from the jury. In this we think he invaded the province of the jury; hence, this assignment of error must be sustained.

In connection with the ninth assignment, the defendant insists that the court erred in refusing to charge its special request No. 2 (which is assigned as error No. 12), and is, that if the plaintiff's automobile suddenly appeared upon the track so that the engineer or other person on the lookout did not have time to do the things required by the statute, the defendant would not be liable even if the things were not done, and if the jury found that after the automobile appeared as an obstruction the engineer did not have time to stop the train and prevent the accident by the exercise of every means at his command, being on the lookout ahead, then the defendant would not be liable.

It would have been error to have given this request in connection with the common-law count; and as the court had given this in substance under the statutory count, this assignment must be overruled.

In connection with the ninth assignment, it is insisted that the court erred in refusing to give the defendant's tenth special request (which is assigned as error No. 16) and is, that the railroad was not required under the statute to observe the precautions as to sounding the alarm, putting on the brakes and doing all things possible to stop the train and prevent the accident until the automobile appeared as such obstruction on the track, and, if after it appeared as an obstruction, it was impossible to comply with the statutory requirements, then its failure to so comply under the circumstances would not render the railroad liable.

It would have been error to have given this request in connection with the charge on the common law count. The court had already given in his charge the statutory duties of the railroad on the statutory count. In other words, he had told the jury what the railroad's statutory duties were, and what the statute required of the railroad, but he nowhere in express terms told the jury in connection with the statutory count that the railroad was not required to observe the statutory precautions until the automobile became an obstruction on the track or until it came within striking distance of the engine. We think he should have given this request in connection with his charge on the statutory count.

The tenth assignment is directed at the court's charge wherein the court stated the substance of the common-law count and stated that if the preponderance of the evidence showed that the defendant was guilty of negligence, as alleged in that count, and that this neg-

ligence was the proximate cause of the injuries as above defined, then the plaintiff would be entitled to recover.

The counsel for defendant does not point out wherein the court erred in this respect, except to say that "it is not the law." But, in the view we take of the circumstances in connection with the common-law count, we think that the court did not err in this respect. Taking the charge all together, the court set out the substance of the common-law count then defined to the jury what was meant by negligence and proximate cause of the injuries, and we think his charge in that respect was correct.

However, it is insisted that the portion of the charge above complained of was in conflict with subsequent portions of the charge, in that the court later charged the jury that no duty rested upon the defendant to slow down its train where the accident is alleged to have occurred, and that the jury could not predicate liability alone on account of excessive speed of the train at the time or immediately preceeding the accident. If there was any error in this clause it was in favor of the defendant and against the plaintiffs.

It is further insisted that this portion of the charge was also in conflict with another portion of the charge in which it was stated that: "there was no duty upon the defendant to sound any alarm whistle or ring the bell on approaching this crossing until some one appeared at the crossing so close as to be in danger of being struck by the train," etc., "and the defendant cannot be held liable for not sounding the whistle or ringing the bell before the train was in sight of the crossing or before the plaintiff appeared where his car could be seen."

We think that the court was in error in charging that no duty was required of the railroad until the train came within sight of the crossing and the automobile came within sight of the lookout, but this error was in favor of the defendant.

We do not see that the defendant was prejudiced in any way by the apparent conflict.

In other words, we think taking his charge as a whole on the common law count that he charged the jury that it was negligence on the part of the railroad to approach a much used and dangerous crossing, where the traveler's view of the train was obstructed, without giving notice of its approach, but he charged that the notice was only required to be given when within sight of the crossing and when the automobile was within sight of the lookout. This was error but it was in favor of the defendant; and we do not see that this conflict could prejudice the defendant, unless it tended to confuse the jury, but by taking the whole charge on this common-law count, we think that he charged the jury that if the preponderance of the evidence showed that if the railroad was guilty of negligence,

as alleged in the common-law count, and if the negligence was the proximate cause of the injuries, the plaintiff would be entitled to recover, but in that connection he stated that the plaintiff could not predicate liability alone on account of excessive speed of the train, and that he further limited the notice of the approach to a time when the train came in sight of the crossing and the automobile came in sight of the lookout on the train. We think that this was error, and that under this count it was the duty of the railroad to give notice of its approach in time to warn travellers on the highway approaching the crossing, whether the crossing was in sight of the train or not, but this did not prejudice the defendant. Hence, this assignment of error is overruled.

By assignments Nos. 11 and 15 it is insisted that the court erred in refusing to charge the defendant's special requests Nos. 1 and 6 that where the required statutory signals had not been placed at the crossing by the county authorities, then there was no obligation upon the railroad to blow the whistle or ring the bell on approaching the crossing one quarter of a mile therefrom, and that the railroad was under no obligation to give warning of the approach of its train at the crossing.

The statutory count is based upon the non-observance of the statutory precautions set out in subsection 4 of the statute, but subsection 2 is not relied upon as a ground of negligence. The plaintiffs are confined to the specific negligence alleged in the declaration. See Moore & McFerren v. Fletcher, 145 Tenn., 97; Wallwork v. Nashville, 251 S. W., 775. Hence, a charge of these requests would have been error in so far as the statutory count was concerned. It certainly would have been error to have charged this statute in connection with the common law count as it would have confused the jury as to the railroad's common law duties. Hence, these assignments of error must be overruled. See Railroad v. Crews, 118 Tenn., 52.

The thirteenth assignment complains that the Judge refused to charge defendant's special request No. 4, which in substance was that if the jury should find that plaintiff went upon the crossing without stopping to look and listen and without taking any precautions to prevent an accident, the plaintiff would be guilty of contributory negligence and if it proximately contributed to the injury, such negligence would bar a recovery on the common-law count. We think that the court did not err in refusing this request as it assumed several other facts set out in said request that were not proven. We think that the court's charge on the proposition of plaintiff's contributory negligence was correct. This assignment is overruled.

We think that the court's charge sufficiently covered defendant's special request No. 5, which was assigned as error No. 14; hence, this assignment is overruled.

The assignments Nos. 6 to 8, inclusive, go to the excessiveness of the verdicts. As the cases must be reversed and remanded for the reasons hereinabove set out, we express no opinion on these assignments.

It results that assignments Nos. 9 and 16 are sustained, and the judgment must be reversed, the verdicts set aside, and the cases remanded for new trial. The cost of the appeal is adjudged against the defendants in error, for which execution may issue. The adjudication of the cost that accrued in the lower court will await the final termination of the cases.

Faw, P. J., and DeWitt, J., concur.