NASHVILLE, C. & ST. L. RY. v. BRYMER (two cases).—124 S. W. (2d) 261.

Middle Section.    September 10, 1938.

Petition for Certiorari Denied by Supreme Court, February 4, 1939.

Malcolm C. Hill, of Sparta, and Walton Whitwell, Wm. H. Swiggart, Frank Slemons, and W. A. Miller, all of Nashville, for plaintiff in error railroad.

George H. Hudson and C. C. Geer, both of Sparta, for defendants in error Brymer.

CROWNOVER, J. These two actions were tried together, by agreement, as they grew out of the same accident.

The plaintiffs below, Sina Lee Brymer, a minor, by her mother as next friend, and May Brymer in her own rights, brought these actions for damages for personal injuries suffered by them in a collision with the defendant's train while walking on a bridge across Town Creek just outside the corporate limits of the town of Sparta.

Both declarations contained two counts. The first count in each declaration was a common law count, in which it was averred that the defendant operated its train in a careless, reckless and negligent manner; and in the second count it was averred that the defendant was guilty of a violation of subsection 4 of Code, section 2628 (statutory precautions), in that, at the time and place of the accident, neither the engineer, fireman, nor any other person was upon the lookout ahead when the plaintiffs appeared as an obstruction upon the track, and the servants in charge of the train did not sound the alarm whistle, or put down the brakes, or use any other means to stop the train and prevent the accident.

The defendant filed pleas of not guilty.

The actions were tried by the court and a jury. At the conclusion of all the evidence the defendant moved for peremptory instructions on each count of each declaration, as there was no evidence upon which verdicts for the plaintiffs could be predicated. The motions were overruled. The jury returned verdicts in favor of the defendant on the first count (the common law count) of each declaration, to which the plaintiffs did not except and from which they did not appeal.

The jury also returned a verdict for $600 in favor of Sina Lee Brymer on the second (or statutory) count of the declaration, and a verdict of $200 in favor of May Brymer on the second (or statutory) count of her declaration.

The defendant filed a motion for a new trial, which was overruled, and it has appealed in erorr, and has assigned one error in each case, that is, that the court erred in overruling its motion for peremptory instructions.

The plaintiffs below live on Gum Springs Mountain, about five miles west of Sparta. On July 13, 1936, they decided to visit Sparta, and

walked from their home. Mrs. May Brymer carried her baby, and they were accompanied by her husband, Louis Brymer. After they had finished their visit they left Sparta, at about 10:30 o'clock in the morning, and walked on the railroad track out of Sparta. Just after they left the corporate limits they came to the railroad bridge across Town Creek. The span of the bridge was 13 feet wide and 129 feet long. When they reached this bridge they stopped, and May Brymer attended to her baby, and they looked and listened about five minutes for a train. Not hearing any train they proceeded to walk on the bridge, May Brymer carrying her baby. When they had gone almost half-way, somebody under the bridge began to yell, "Lookout May, there comes a train," and all began to run across the bridge. Louis Brymer asked his wife for the baby, but she refused to let him carry it. Louis Brymer ran on across the bridge to safety. Sina Lee ran almost across the bridge, but looked back and saw her mother fall down with the baby. She ran back to aid her mother, and about the time she reached her the train struck Sina Lee and knocked her off the bridge and seriously injured her. May Brymer had fallen on the bridge just outside the rail and her baby fell between the cross-ties. As the train passed an oil cup on the engine struck Mrs. Brymer on the head, and cut and bruised her hip and body; but the baby was not injured.

The train was a mixed train, consisting of an engine and 18 cars, of which two were loaded and 16 empties, and it was almost 900 feet long and weighed 540 tons. It was traveling 25 or 30 miles per hour down grade when the employees saw the plaintiffs on the bridge. The track had a six per cent. curve to the left before it entered upon the bridge. The engineer was in his seat in the cab on the right hand side of the engine and was looking ahead as he approached the bridge, but did not see the people on account of the engine and the curve. The fireman was in his box in the cab on the left hand side, and as they approached the bridge he saw the plaintiffs and signalled the engineer to stop. The engineer put down the brakes and cut off the steam and stopped the train, but too late to prevent the accident. He did not sound the whistle as they insist he had no time to do anything else before the collision. It is not shown how near the engine was to the bridge when the fireman saw the plaintiffs.

It is seriously contended by the railroad that the engineer and fireman could not see the plaintiffs on the bridge in time to stop and prevent the accident, on account of the curve, which was 700 or 800 feet long, and on account of an embankment 12½ feet high just south of the track near the bridge. It is contended that the employees did all that was within their power to prevent the accident, and that to sound the alarm whistle could have served no purpose, as the plaintiffs had knowledge of the approach of the train before

they could see it, and therefore the court should have directed verdicts for the railroad.

After an examination of the record we cannot agree with this contention. Louis Brymer testified that as they were about half-way across the bridge somebody yelled, "Lookout May, there comes a train." He said: "We looked around then and the train was about ten or fifteen or twenty feet of the bridge, somewhere about that." "All of us started running." None of them knew of the approach of the train until they were notified by somebody under the bridge yelling: "Lookout, there comes a train." Neither of the plaintiffs had heard it, and neither looked back, but both began to run. According to the testimony the people on the bridge could have been seen by the lookout on the train when it was within about 400 feet of the bridge. If the whistle had been sounded then, they probably would have had time to escape to safety, and it was a question for the jury. Code, section 2628, sub-sec. 4.

"A failure to observe the statute, though not the proximate cause of the injury, renders the Company liable, although it may appear that the accident or collision would have occurred had the precautions been observed, and even though the negligence of the plaintiff was the direct and proximate cause. (See Artenberry v. Railway Co., 103 Tenn., 266 [52 S. W., 878]; Railroad Co. v. Davis, 104 Tenn., 442 [58 S. W., 296]; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415 [58 S. W., 737])." Louisville & N. R. Railroad Co. v. Ross & D. B. Anderson Co., 2 Tenn. App., 384, 390.

"The question whether the engineer should have observed any particular precaution first, where he did not have time to observe all, is a question for the jury where reasonable minds may differ as to which should be observed first. (See [Tennessee Cent.] Railroad Co. v. Morgan, 132 Tenn., 1 [175 S. W., 1148]; Railroad v. Scott, 87 Tenn. [494], 498, 501, 502 [11 S. W. 317]; [Southern] Railroad Co. v. Brooks, 125 Tenn., 260 [143 S. W., 62]; Railroad Co. v. Foster, 88 Tenn. [671], 687 [13 S. W., 694, 14 S. W., 428])." Louisville & N. R. Railroad Co. v. Ross & D. B. Anderson Co., supra.

"The mere fact that a party is a trespasser upon the railroad track and is injured while thereon, or while contributing to the injury by his own negligence, will not prevent him from recovering damages for injuries negligently inflicted by the railroad company, if the injuries might have been averted by the use of ordinary care on the part of the company. Chattanooga Station Co. v. Harper, 138 Tenn., 562, 199 S. W. 394; Patton v. East Tennessee, V. & G. R. Co., 89 Tenn., 370, 15 S. W., 919 [12 L. R. A. 184]." Williams' Code, Note under sec. 2628, p. 42.

"Contributory negligence on the part of the person injured may be considered in mitigation of damages. Southern R. Co. v. Koger

[6 Cir.], 219 F., 702. See Tennessee Cent. R. Co. v. Page, 153 Tenn., 84, 282 S. W., 376." Williams' Code, note under sec. 2628, p. 42.

The women who yelled, "Lookout for the train," heard it before they could see it, but it is not shown where their residences were located. They were not in position to see down the track, or, at least, in position to see the train, although they could see the railroad bridge. However, according to the evidence, and especially the photographs, men on the bridge could have been seen as far as 420 feet away.

"If there is time to comply with only a part of the statute, then that part should be complied with, which in the exercise of ordinary care would be the most efficient means to prevent the accident. (See [Tennessee Cent.] Railroad Co. v. Morgan, 132 Tenn. [1], 12, 13 [175 S. W., 1148]; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415 [58 S. W., 737]; Artenberry v. Railroad Co., 103 Tenn., 266 [52 S. W., 878])." Louisville & N. R. Railroad Co. v. Ross & D. B. Anderson Co., 2 Tenn. App., 384.

And the questions whether the defendant had somebody on the lookout ahead, and whether it should have first applied the brakes or have sounded the alarm whistle, were questions for the jury. Louisville & N. R. Railroad Co. v. Ross & D. B. Anderson Co., supra.

It is further contended by the railroad that Sina Lee Brymer ran off the bridge to a place of safety and then returned to her mother on the track, where she was struck and injured, and therefore she cannot recover, citing Louisville & N. Railroad Co. v. Truett, 6 Cir., 111 F., 876; Southern Railroad Co. v. Sutton, 6 Cir., 179 F., 471. We are unable to concur in this contention, as it does not appear that Sina Lee had reached a place of safety. In fact, it appears that she had not, and the question was one for the jury. Louisville & N. Railroad Co. v. Truett, supra.

Hence the court did not err in refusing to direct a verdict, and the assignment of error in each case must be overruled.

It was insisted by the defendants in error that the failure of the servants of the railroad to ring the bell or sound the whistle at intervals within the corporate limits of Sparta, as required by subsec. 3 of Code, sec. 2628, rendered the railroad liable in these suits. We think that this contention cannot be sustained for two reasons: (1) The failure to ring the bell or to sound the whistle at intervals was not averred as a ground of negligence in the declaration. East Tenn. Coal Co. v. Daniel, 100 Tenn., 65, 42 S. W. 1062. (2) Subsec. 3 of Code, section 2628, does not apply to accidents outside of the corporate limits. Illinois Cent. Railroad Co. v. Davis, 6 Cir., 32 F. (2d), 232; Stricklin v. Louisville & N. R. Railroad Co., 2 Tenn. App., 141.

Both of the plaintiffs below were injured. Sina Lee was more

seriously injured. She suffered a dislocated shoulder, cuts, bruises and injuries on her body, but she refused to let the doctors set her shoulder and left the hospital before she recovered. But no error is assigned as to the amounts of the verdicts. Their verdicts were probably reduced on account of their contributory negligence. They were mountain people, illiterate, and unable to read or to write.

A judgment will be entered in this court in favor of Sina Lee Brymer and against the railroad for $600 with interest from the date of the entry of the judgment below, and a judgment for $200 with interest from the date of the entry of the judgment below in favor of May Brymer and against the railroad. The costs of the cause are adjudged against the railroad and the costs of the appeal are adjudged against the railroad and the surety on its appeal bond.

Faw, P. J., and Felts, J., concur.