TENNESSEE CENT. RY. CO. v. DUNN.—145 S. W. (2d) 543.

Middle Section.   April 27, 1940.

Petition for Certiorari Denied by Supreme Court, December 14, 1940.

Walter Stokes and Roberts & Roberts, all of Nashville, and Louis Chambers, of Lebanon, for plaintiff in error Railway Company.

Allison B. Humphreys, Jr., and William D. Baird, both of Lebanon, for defendant in error Administrator.

CROWNOVER, J.  This is an action by the administrator against the Railway Company to recover $20,000 damages for the negligent killing of the plaintiff's intestate, Nora Mai Dunn, caused by a collision, at a street crossing over the railroad track, in the town of Lebanon, between one of the defendant's trains and an automobile in which Mrs. Dunn was riding.

The declaration contained five counts, but the third count was stricken on demurrer.  The first count was based on averments of common-law negligence as follows:  That the defendant Railway Company was operating its train at a dangerous rate of speed, without giving warning of its approach by sounding the whistle or bell, at a known dangerous crossing, where the view of the driver of an automobile on the street, approaching from the west, was obscured by a large building at the southeast corner of the street intersection, and the track of the Railway Company curved away from the intersection in an eastwardly direction in such a manner that the driver could not see an approaching train until the driver was within a few feet of the intersection.

It was averred in the second count that the defendant was violating an ordinance of the town of Lebanon by running its train at a rate of speed in excess of twenty miles an hour.

The fourth and fifth counts charged statutory negligence in the failure of the Railway Company, through its servants, to observe the statutory precautions, required by Code, sec. 2628(4), by keeping some person upon the lookout ahead, and when an obstruction appeared upon the road, to sound the whistle, put down the brakes,

and employ every possible means to stop the train; and failure to observe the statutory precautions required by Code, sec. 2628(3), by sounding the bell or whistle at short intervals from the time the train was within one mile from the corporate limits until it reached the station.

Hugh Route, the engineer, was made a defendant to the suit, but nonsuit was taken as to him.

The defendant pleaded the general issue of not guilty.

The case was tried by the judge and a jury. At the conclusion of all the evidence the defendant moved the court for peremptory instructions in its favor, upon the declaration as a whole and upon each count separately, on the ground that no evidence had been introduced which would support a verdict, and on the further ground that the plaintiff's intestate was guilty of contributory negligence, which motion was by the court overruled.

The jury returned a verdict of $1,500 on all counts of the declaration in favor of the plaintiff, against the defendant, and judgment was accordingly entered.

The defendant's motion for a new trial was overruled and it appealed in error to this court and has assigned errors as follows:

(1) There is no evidence to support the verdict and the court erred in refusing to grant peremptory instructions in favor of the defendant.

(2) The court erred in charging the jury as follows:

"The defendant, Railway Company, under the holdings of our courts universally, is not required to exercise such precaution until the object appears upon the tracks or near enough on the track to be struck or the persons in charge of the train and the lookouts can see that it is practically on the track or will be on the track within a short time, coming toward the track at a place where it must be or has to get on the track."

(3) The court erred in admitting the testimony of Frank Buchanan, Mayor of Lebanon, which was, in substance, that the Mayor and Board of Aldermen of the Town of Lebanon had passed a resolution requesting the Railway Company to place a signal light at this crossing.

The essential facts, as disclosed by the record, are as follows: The collision occurred at a crossing where a street crosses the defendant's railroad track, about one mile from the station, in the town of Lebanon.

Cumberland Street and the College Street lead north and south. Short Street is a short street, leading east and west, which intersects Cumberland Street on its west side. The main track of the Tennessee Central Railway Company, going into Lebanon from the east, leads southwest and northeast, intersecting College Street and Cumberland Street. Between the two streets there is a six-degree curve in the track. The track crosses Cumberland Street at its intersection with Short Street, but the track leads diagonally across the intersection.

A building occupied by the Dodson Grain Company stands at .the southeast corner of the intersection, fronting 52 feet on Short Street. A switch or spur track leads along Cumberland Street between the Dodson building and the street, about seven feet from the building. From the center of Short Street where this spur track crosses it to the center of the main track on Cumberland Street is twenty feet.

On July 18, 1938, at about 4:50 in the afternoon, Mrs. Nora Mai Dunn, aged thirty-six years, was riding in an automobile driven by Nelda Louise Gentry, her seventeen year old daughter by a former marriage. Mrs. Dunn was seated on the front seat, on the right-hand side. Miss Gentry went to the Middle Tennessee Mills to get some cattle feed, which she had been requested to get by her grandmother with whom she and her mother lived. As she left the mill she started for their home by way of Short Street and Cumberland Street.

When she reached a point about fifteen feet south of the spur track at the intersection she stopped the automobile, looked up and down the track, and listened for a train. She testified that she had a view of the track up to the next street crossing with the exception of the curve; that she could not see what was in the curve. She testified that she was looking and listening, but did not see or hear a train and did not hear a whistle sounded or a bell rung.

She then started to drive across the track with the automobile in second gear. When the automobile was almost across the track, her mother cried out, ''There's the train''; the engine struck the automobile on the right rear fender; the impact threw the automobile over against a railroad sign post on the ·corner of the intersection. Mrs. Dunn suffered injuries from which she died at 8:54 that evening.

Nelda Louise Gentry and Mrs. Dunn were familiar with this crossing and the surroundings.

1. The defendant's first assignment of error is that there was no evidence to support the verdict, and the·court erred in overruling its motion for peremptory instructions in its favor.

This assignment must be overruled, as there is evidence to support the verdict under each count of the declaration.

On the common-law count the plaintiff's contention was that Miss Gentry was driving the automobile down Short Street at the rate of ten miles an hour as she approached the crossing; that on account of the location of the warehouse of the Dodson Grain Company at the southeast corner of the intersection it was impossible to see a train approaching· the crossing from the east until she reached a point beyond the Dodson building and west of the spur track at the street intersection; that she stopped at that point, looked up and down the track, and listened for the sound of the train that she knew was about due; that she saw and heard nothing; that the track makes a curve from the next street to the east (College Street) up to Cumberland Street; that she could not see what, if·anything, was in the center

of the curve, although she could see the next street crossing; that she started the automobile and was driving across the track in second gear, and was almost across the track, when the engine, without any warning of any kind having been given, struck the right rear fender of the automobile; that the automobile was thrown against a railroad sign post on the corner of the intersection; that the train ran about 300 feet after the collision before it came to a full stop.

Several witnesses testified for the plaintiff that the whistle was blown at the city limits but they did not hear it after that. Some witnesses testified that they did not think the whistle was sounded or the bell rung. Other witnesses testified that they did not hear a whistle or bell; they were in the immediate neighborhood where they could have heard them if they had been sounded. The driver testified that she was looking and listening for a train, but heard no sound of a bell or whistle.

The defendant's evidence was, in substance, that the whistle was blown at the corporate limits and for the station; that the bell, which rings automatically, was turned on and continued to ring until after the collision; that the speed of the train was checked to about fifteen miles an hour; that the train was about two minutes late; that the whistle was sounded for the College Street crossing and again for the Cumberland Street crossing; that the engineer and fireman were on the lookout ahead, the engineer on the right side of the engine and the fireman on the left side; that the train was coasting toward Cumberland Street at a speed of about twenty miles an hour; that the railroad track is visible for more than a block east of this intersection; that Miss Gentry did not bring her automobile to a stop; that when the fireman first saw her automobile it was coming out from behind the Dodson Grain Company's warehouse, traveling at the rate of about twelve miles an hour; that he immediately warned the engineer, who applied the emergency brake and sand, but did not have time to sound the whistle; that the train struck the automobile and came to a stop about three hundred feet west of the crossing, which was as soon as it could stop.

On the second count, as to the speed of the train, the evidence for the plaintiff was that it was traveling at a high rate of speed. One witness testified that it was running thirty-five miles an hour. The evidence for the defendant was that it was not exceeding twenty miles an hour, the speed limit fixed for trains by a city ordinance, but five miles faster than the speed permitted by the company's rules.

On the fourth and fifth, statutory, counts, the engineer and fireman testified that they were keeping a lookout ahead; that the engineer applied the emergency brake as soon as it was discovered that Miss Gentry was going to attempt to cross, but did not have time to sound the whistle, but the bell was ringing; that he was so near the automobile that he was unable to stop the train before striking the automo-

bile; that the whistle was sounded on approaching the town, and again sounded and the bell set ringing when the train was at a distance of one mile from the station, and the whistle was sounded for each street crossing.

The evidence for the plaintiff was that the whistle was sounded only at a distance of one mile from the station; that the bell was not rung, and the whistle was not sounded for this crossing, or when the automobile became an obstruction on the track.

The plaintiff contends that the engineer and fireman were evidently not keeping a lookout ahead, for if they had they would have seen the automobile in time to apply the brakes and sound the whistle. And the plaintiff contends that if the engineer had first sounded a warning whistle before applying the brakes, the driver of the automobile might have increased its speed and have gone across the track before the train reached the crossing, or have turned aside and have avoided a collision.

■ The questions whether the fireman was on the lookout ahead, and whether the engineer should have first sounded the alarm whistle or have applied the brakes, were questions for the jury. Nashville, C. & St. L. Ry. v. Brymer, 22 Tenn. App., 468, 124 S. W. (2d), 261.

"The question of whether the engineer should have observed any particular precaution first, where he did not have time to observe all, is a question for the jury where reasonable minds may differ as to which should be observed first. (See [Tennessee Central] Railroad [Co.] v. Morgan, 132 Tenn., page 1 [175 S. W., 1148]; Railroad v. Scott, 87 Tenn. [494], 498, 501, 502 [11 S. W. 317]; [Southern] Railroad [Company] v. Brooks, 125 Tenn., 260 [143 S. W., 62]; Railway [Co.] v. Foster, 88 Tenn. [671] 687 [13 S. W. 694, 14 S. W. 428])" Louisville & N. Railroad Co. v. Ross & D. B. Anderson Co., 2 Tenn. App., 384, 390; Nashville, C. & St. L. Ry. v. Brymer, 22 Tenn. App., 468, 471, 124 S. W. (2d), 261.

"If there is time to comply with only a part of the statute, then that part should be complied with, which in the exercise of ordinary care would be the most efficient means to prevent the accident. (See [Tennessee Cent.] Railroad [Co.] v. Morgan, 132 Tenn. [1], 12, 13 [175 S. W., 1148]; Artenberry v. [Southern] Railroad [Co.], 103 Tenn., 266 [52 S. W., 878]; Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415 [58 S. W., 737])." Louisville & N. Railroad Co. v. Ross & D. B. Anderson Co., 2 Tenn. App., 384; Nashville, C. & St. L. Ry. v. Brymer, 22 Tenn. App., 468, 472, 124 S. W. (2d), 261.

It is admitted that the automobile in which Mrs. Dunn was riding appeared as an obstruction on the railroad track in front of the train.

■ The defendant introduced two pictures purporting to be photographs of the railroad track between Cumberland and College Streets, and a blueprint of a map of the track, and contended that they contradicted Miss Gentry, as they showed that a person stopping at the

spur track and looking east would have a view of the entire track between these streets.

We have carefully considered these photographs and have compared them with the blueprint. According to the testimony of the civil engineer and according to the blueprint, there was a six-degree curve in the track between the two streets. According to the photographs the curve appears to be greatly in excess of six degrees; hence the photographs and blueprint do not agree; and, therefore, it cannot be said that Miss Gentry was contradicted by the physical facts.

The evidence tended to show that neither the driver of the automobile nor the deceased could see the train in time to avoid the accident, and it was therefore for the jury to decide the questions whether the Railway Company was negligent and whether the deceased was contributorily negligent.

2. We are of the opinion that the court's charge, taken as a whole, correctly instructed the jury as to obstructions on the track. He went on to instruct the jury that no duty rests upon the company to comply with the requirements of the statute until an obstruction appears on the track in front of the moving train or so near that it will be struck by the train.

3. There was no error in the admission of the testimony of the Mayor of Lebanon that the Mayor and Board of Aldermen had passed a resolution requesting the Railway Company to place a signal light at this crossing. According to the plaintiff's evidence a traveler on Short Street could not see a train approaching until he reached the street intersection, and the court admitted this testimony only for one purpose, and that was to show that the Railway Company had notice that this was a dangerous crossing.

All the assignments of errors having been overruled, it results that the judgment of the lower court is affirmed. A judgment will be entered in this court in favor of A. C. Dunn, administrator of the estate of Nora Mai Dunn, deceased, against the Railway Company, for $1,500, with interest thereon from May 24, 1939, to the present, together with the costs of the cause in the court below. The costs of the appeal will be adjudged against the Railway Company and the sureties on its appeal bond.

Faw, P. J., and Felts, J., concur.