CASTEEL v. SOUTHERN RY. CO.

(Knoxville, September Term, 1948.)

Opinion filed December 11, 1948.

CLYDE W. KEY, of Knoxville, for plaintiff in error.

LEONARD E. LADD, of Harriman, and ELMER L. EBLEN, of Kingston, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

This is a personal injury suit resulting from the death of plaintiff's son, Eldridge Lee Casteel, on June 11, 1945,

when he was struck and killed by a train owned and operated by the defendant at a point on its track within the corporate limits of Oliver Springs, Tennessee. There was a recovery for $1500 in the circuit court which was affirmed by the Court of Appeals. *Certiorari* has heretofore been granted and argument heard.

On the morning of June 11, 1945, about 1:20, a freight train, loaded with coal, westbound between Clinton, Harriman and Oakdale, approached Oliver Springs, and at a point established as about 229 feet inside the corporate limits, struck and killed plaintiff's son. The deceased was drunk and had been for some time, and sat down upon the track and was evidently asleep when he was killed.

The engineer on the locomotive of this train testified that he was maintaining a lookout ahead on the track on this occasion; that the locomotive headlight and brakes were operating and in good condition; that at the mile station board he signaled with one long blow of the steam whistle, subsequently sounding two crossing signals, each consisting of two short, one long and two short blasts of the whistle, and slowed the train down to ten miles per hour. He further testified that when the locomotive headlight first flashed upon an object on the track, which he at once recognized as a man, he turned the whistle loose and "swiped the gauge," going into emergency. No other measures were taken or, according to this witness, could have been taken in the space of time preceding the impact. The engineer estimated that the locomotive was about 80 feet from the man (Casteel) on the track when he first saw him, the latter not falling within the range of the headlight until the front of the engine rounded the curve. It is not contended that the whistle was blown in the space of this 80 feet.

The brakeman testified that he was on the fireman's seat in the cab, also looking down the track, but could not see the object ahead from his position. He corroborated the engineer substantially relative to the signals and emergency procedure, adding that the bell was also ringing. He estimated that the train was brought to a stop about the length of the engine and twelve cars from where the emergency brakes were applied. The deceased's body was found under the twelfth car.

The watchman at the crossing testified that he had seen Casteel about 11:15 that night, accompanied by another person, walking down the railroad right of way; that he was intoxicated and staggering. This witness also testified that the engineer started blowing for his crossing at the "35 board," about 800 to 1,000 feet distant, and that when he finished blowing the whistle, there was "just a thought" before the emergency brakes were applied and the train stopped just at the crossing.

The plaintiff offered negative testimony pertaining to the sounding of the whistles and the bells, and evidence that people frequently walked along and sometimes sat on the railroad track in the vicinity of Oliver Springs.

The proof shows that for a distance of 1,100 to 1,200 feet east of the city limits of Oliver Springs the railroad track is straight and 1.27 per cent down grade going west. Between the city limits, approaching from the east, and the approximate point where Casteel was seated upon the rail, the track curves to the right 14 feet from a straight line; or extended from the initial point, the straight line view of the engineer, seated on the right-hand side of the locomotive, would be off the point where deceased was seated on the south rail 9 feet and 3½ inches. By daylight, there is an unobstructed view of

the track on this approach for 600 or 700 feet; but the defendant introduced evidence to demonstrate that at night by locomotive headlight, due to the curvature of the track, an object could not be seen on the track at this point for more than 180 or 182 feet.

The only question presented on this appeal is whether there was any material evidence to support the verdict of the jury. The Court of Appeals came to the conclusion that the defendant had not shown it had done everything possible to avoid the collision; and that while the defendant had shown the emergency brakes were applied, it had not shown that the whistle was blown repeatedly until the body was struck.

■■ The engineer testified that he had just given the crossing signal when he saw the deceased on the track and he released the whistle in order to use his hands for the brakes; that having applied the brakes, there was no time to do anything else to stop the train. This statement was made in face of the fact that he saw the object on the track 80 feet in front of the engine and that he was only running ten miles per hour at that time. While it is permissible for an engineer to thus express his opinion, it is not conclusive, as this question is within the exclusive province of the jury. *Louisville & N. R. Co.* v. *Frakes et al.,* 11 Tenn App. 593. So, it appears that it was a question for the jury to determine whether the engineer complied with subsection 4 of section 2628 and sections 2629 and 2630 of the Code providing that in case of noncompliance the railroad company shall be liable, etc.

■ The precautions to be taken by the engineer when an obstruction appears on the track are set out in the statute (subsection 4 of section 2628), and "If there was not time to do everything the statute requires, the

engineer must do the most important thing which the occasion may dictate.'' *Tennessee Cent. Railroad Co.* v. *Morgan,* 132 Tenn. 1, 13, 175 S. W. 1148, 1151. Further, '' 'The question of whether the engineer should have observed any particular precaution first, where he did not have time to observe all, is a question for the jury where reasonable minds may differ as to which should be observed first.' '' *Tennessee Cent. Ry. Co.* v. *Dunn,* 24 Tenn. App. 383, 388, 145 S. W. (2d) 543, 546. The requirements of the statute have been held to apply where an intoxicated person becomes an obstruction upon a railroad track. *Tennessee Cent. Railroad Co.* v. *Binkley,* 127 Tenn. 77, 153 S. W. 59.

We conclude, therefore, that the ultimate question was whether the engineer employed all the means at his disposal to prevent the accident. This question, we think, was properly sumitted to the jury, and there is material evidence to support the verdict.

All the assignments of error are overruled and the judgment of the lower court is affirmed.

All concur.