The **ESTATE OF Stuart LUTREN, Deceased, by Jo Ann F. Lutren, Administratrix, Plaintiff-Appellant,**

v.

**CHESAPEAKE AND OHIO RAILROAD, Defendant-Appellee.**

No. 77–1135.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1978.

Decided Feb. 20, 1979.

Eugene D. Mossner, Cicinelli, Mossner, Majoros & Alexander, Saginaw, Mich., for plaintiff-appellant.

Robert A. Straub, Southfield, Mich., A. T. Lippert, Jr., Smith & Brooker, Saginaw, Mich., for defendant-appellee.

Before LIVELY, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

PECK, Senior Circuit Judge.

Plaintiff administratrix brought a wrongful death action against defendant-appellee Chesapeake and Ohio Railroad after her husband, Stuart Lutren, was killed in a train-car collision on September 24, 1971. A jury trial was held in the district court from October 12 to October 19, 1976. Although the evidence presented at trial was relatively simple and nontechnical in nature, the jury deliberated for approximately two days before returning a verdict in favor of the Railroad. Plaintiff subsequently perfected an appeal to this Court and now claims that the trial judge erred when instructing the jury. We conclude that the district judge violated Rule 51, Federal Rules of Civil Procedure [1] when he amended the jury instructions after plaintiff's counsel had completed his closing argument. We reverse.

I

The instructions challenged on appeal all relate to the issues of contributory negligence and last clear chance. In order to assess the effect of these instructions on the jury, it is necessary to understand fully the facts of the case as presented to the jury and the sequence of events which occurred at trial.

Hall Street in Farwell, Michigan, runs in a north and south direction and crosses the C & O Railroad tracks, which run in an east and west direction, at right angles. On the morning of September 24, 1971, at approximately 7:30 a. m., decedent Lutren was traveling south on Hall Street, returning home from work as he had done regularly for more than two years. As Lutren arrived at the Hall Street crossing, his automobile came to a stop directly in the path of a rapidly approaching, unscheduled train.[2]

1. Federal Rule of Civil Procedure 51 provides:

**Instructions to Jury: Objection**

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

2. The train involved in the collision was an unscheduled train which came by the Hall Street crossing on a fairly regular basis between 7:00 a. m. and 8:00 a. m. According to the proofs presented at trial, the speed of the

At trial, the engineer of the train testified that he first saw an automobile stalled or stopped on the tracks when the train was at the Superior Street crossing, 406 feet from the Hall Street crossing. The engineer further testified that he did not immediately apply the train's emergency brakes, in spite of the pending danger, because it appeared to him that the automobile was backing up.[3]

The issue of decedent's own negligence in causing the fatal collision was examined in detail by both trial counsel. Specifically, evidence was presented concerning what decedent Lutren heard and saw as he approached the Hall Street crossing and what decedent did at a "stop sign," located thirty-two feet north of the railroad tracks. For example, plaintiff introduced evidence tending to show that decedent's car windows were rolled up at the time of the collision; that his radio was turned on; that a combination of buildings, trees and elevated ground obstructed the view at the Hall Street crossing; and that the "extremely bright" morning sun of September 24, 1971, made it impossible for decedent to see down the tracks to the east.[4] In its defense, the Railroad introduced an eyewitness to the collision, Neal Agle, who testified that he had observed the Lutren vehicle slow down but fail to stop at the stop sign. On cross-examination, counsel for plaintiff challenged the reliability of Agle's testimony by establishing that Agle had given a recorded statement three days after the collision in which he indicated he did not see the Lutren automobile when it passed the sign.

Two Michigan statutory provisions, applicable to the issue of decedent's contributory negligence, were cited during the course of the proceedings; Mich.Comp.Laws § 257.-668, which controls the conduct of motorists at railroad crossing stop signs and Mich. Comp.Laws § 257.667, which requires a

driver of a vehicle to "stop within 50 feet but not less than 15 feet from the nearest rail of the railroad" in specified situations. These two provisions read as follows:

The state highway commissioner with respect to highways under his jurisdiction, the several county road commissioners and local authorities with reference to highways under their jurisdiction are hereby authorized to designate certain grade crossings of railways by highways as 'stop' crossings, and to erect signs thereat notifying drivers of vehicles upon any such highway to come to a complete stop before crossing such railway tracks, and whenever any such crossing is so designated and signposted, it shall be unlawful for the driver of any vehicle to fail to stop within 50 feet but not less than 10 feet from such railway tracks before traversing such crossings. The erection of or failure to replace or maintain such signs shall not be a basis for any action of negligence against the state highway commissioner, the several county road commissions or local authorities.

Mich.Comp.Laws § 257.668.

(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the following circumstances the driver shall stop within 50 feet but not less than 15 feet from the nearest rail of the railroad, and shall not proceed until he can do so safely:

(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train.

(2) A crossing gate is lowered or a human flagman gives or continues to give a signal of the approach or passage of a railroad train.

(3) A railroad train approaching within approximately 1,500 feet of the highway crossing gives a signal audible from such distance and the train, by

---

train just prior to impact was between 42 and 47 m. p. h.

**3.** The evidence below indicated that the train's emergency brakes were not applied until the train was some twenty-five feet from the Lutren vehicle.

**4.** One witness who crossed the Hall Street tracks at approximately 7:15 a. m. on September 24, 1971, stated that the sun appeared as a "ball of fire sitting right on the tracks."

reason of its speed or nearness to such crossing is an immediate hazard.

(4) An approaching railroad train is plainly visible and is in hazardous proximity to the crossing.

(b) No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed.

Mich.Comp.Laws § 257.667.

After the district judge had discussed the requests for jury instructions with counsel in chambers, the judge and both counsel agreed that the jury would be given instructions on Mich.Comp.Laws § 257.667 and would not be given instructions on the so-called "stop sign provision," Mich.Comp. Laws § 257.668. With this understanding in mind, plaintiff's counsel gave a final argument to the jury in which he made the following statements:

The third issue we come to, though, is was Stuart Lutren himself guilty of contributory negligence and what rules then apply as to contributory negligence?

\*  \*  \*  \*  \*  \*

Well, I want to discuss whether he stopped or whether he didn't stop at the stop sign but let's just think of what he could see at that particular time and with respect to the position of the sun.

Now, this is the photograph—this is Defendant's Exhibit 24—that was taken 400 feet north of the northerly face (sic) rail facing the track to the east. Now, if he stopped at the stop sign, that is 32 feet away—that is ten feet, that was right at the stop sign, back and looked to the left—understand at this time that the train was somewhere down the track— and this sun which is coming up like a ball of fire is some point to the south of the track but generally right in his face— do you see what I mean? *There is a stop sign but at some point he either went passed (sic) the stop sign without stopping or he stopped and looked.* My point is, as he did look, the sun was coming up not unlike it was for Mr. Firmin.

\*  \*  \*  \*  \*  \*

Maybe in his [Neal Agle's] dreams he saw Mr. Lutren pass the stop sign, I don't know. That is one of the pieces of evidence. Though he has testified that way, you weigh that, that is your job.

What do you know about what Mr. Lutren did that day? That is the problem. The day was chilly, so the windows would be up in the car. *He came to the stop sign, his radio was on. He should have stopped. Did he? I don't know.* If he would have, he would have looked to the right, he would have looked straight ahead; he would have looked to the left. He would have listened and at that time had he done those things, the train would be, from the photographs I have shown you, out of his range of vision to the left. Probably at that point sounding the horn, yes. Probably. Should have been. He didn't hear it and he started forward, *or he didn't stop, I don't know.*

(Emphasis added.) Immediately after plaintiff's counsel had completed his closing argument, defense counsel moved that the district judge include an instruction on Mich.Comp.Laws § 257.668, so that the jury would be informed of decedent's statutory duty to stop near the stop sign protecting the Hall Street crossing. The district judge agreed to reverse his previous decision to exclude any instruction on § 257.668, and the court's final charge included the following language:

It is also the law in this State that a motorist has a duty to stop his vehicle within 50 feet but not less than 10 feet of any railroad track crossing at which a stop sign is posted.

If you find that plaintiff decedent violated this duty, you will find that plaintiff was negligent in this respect and you will go on to consider whether his negligence was a proximate cause of the accident.

II

Federal Rule of Civil Procedure 51 mandates that a trial court "shall inform

counsel of its proposed action upon the requests [for jury instructions] prior to their arguments to the jury, but . . . shall instruct the jury after the arguments are completed." This requirement, which has existed in its present form for some forty-one years, realistically balances various aspects of the jury instruction process. On the one hand, the Rule promotes intelligent advocacy by opposing counsel. With the knowledge of which requests for instructions the court plans to grant and which it plans to deny, both counsel can pattern their closing arguments on the points of law that will be explained to the jury in the final charge. See Wiedersum Associates v. National Homes Const. Corp., 540 F.2d 62, 66 (2d Cir. 1976); Hetzel v. Jewel Companies, Inc., 457 F.2d 527, 535 (7th Cir. 1972); Downie v. Powers, 193 F.2d 760, 766 (10th Cir. 1951); Terminal R. Ass'n. of St. Louis v. Staengel, 122 F.2d 271, 278 (8th Cir.), cert. denied, 314 U.S. 680, 62 S.Ct. 181, 86 L.Ed. 544 (1941); 9 Wright & Miller, Federal Practice and Procedure § 2551. On the other hand, the Rule preserves a trial court's discretion to modify a final charge up to the time of its actual delivery to the jury. Such discretion is needed because, as experience teaches, closing arguments themselves occasionally raise matters which affect the content of the proposed instructions. See Terminal R. Ass'n. of St. Louis, supra, 122 F.2d at 278. Given the balance struck by Rule 51, it follows that a trial court's reversal of a decision on a jury instruction request after a counsel's closing argument does not automatically necessitate a new trial.

First, to be reversible, error under Rule 51 must result in "material prejudice" to the cause of the party raising the error on appeal. Bradshaw v. Thompson, 454 F.2d 75, 81 (6th Cir.), cert. denied, 409 U.S. 878, 93 S.Ct. 130, 34 L.Ed.2d 131 (1972). We conclude that the district court's action in the present case resulted in such prejudice to plaintiff-appellant's position. Plaintiff's counsel spent a substantial portion of his closing argument contending that decedent Lutren did not have any duty under Mich.Comp.Laws § 257.667 because the four situations controlled by § 257.667 did not apply to the present case.[5] In so arguing, plaintiff's counsel took an equivocal position on the question of whether the decedent had in fact stopped at the Hall Street crossing stop sign:

> . . . There is a stop sign but at some point he either went passed (sic) the stop sign without stopping or he stopped and looked. . . .

> *    *    *    *    *    *

> . . . He came to the stop sign, his radio was on. He should have stopped. Did he? I don't know. . . .

> *    *    *    *    *    *

> . . . He didn't hear it [the train whistle] and he started forward, or he didn't stop, I don't know. . . .

Thus, when the district judge added the instruction which confirmed decedent's duty to stop in the immediate vicinity of the stop sign, pursuant to Mich.Comp.Laws § 257.-668, the chances of plaintiff's success were

5. Mich.Comp.Laws § 257.667 requires a driver of a motor vehicle to "stop within 50 feet but not less than 15 feet from the nearest rail of the railroad" in four situations:

(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train.
(2) A crossing gate is lowered or a human flagman gives or continues to give a signal of the approach or passage of a railroad train.
(3) A railroad train approaching within approximately 1,500 feet of the highway crossing gives a signal audible from such distance and the train, by reason of its speed or nearness to such crossing, is an immediate hazard.

(4) An approaching railroad train is plainly visible and is in hazardous proximity to the crossing.

Situations (1) and (2) were clearly inapplicable to the present case. The Hall Street crossing was not protected by an "electric or mechanical signal device," "a crossing gate" or "a human flagman" at the time of the collision. Plaintiff's counsel argued that situations (3) and (4) were also inapplicable because decedent, acting with reasonable care, neither heard nor saw the oncoming train until his vehicle had stopped on the railroad tracks.

substantially diminished. We further conclude that plaintiff's counsel did not invite prejudice to his position by injecting the issue of Mich.Comp.Laws § 257.668 into the trial through his closing argument. If counsel had so raised the issue, plaintiff could not now claim that the court's instruction on the provision amounted to reversible error. However, it is inconceivable that the equivocal statements made during closing argument, adverse to plaintiff's own position, raised the issue of the "stop sign provision" in any manner which justified the amended instruction.

■ Second, it has been suggested that an error under Rule 51, caused by a trial court's modification of its proposed jury instructions, should not be considered on appeal when counsel for the complaining party has failed to request a supplemental closing argument. *See Terminal R. Ass'n. of St. Louis, supra*, 122 F.2d at 278. Although a rule requiring counsel to request a supplemental closing argument may comport with the interests of justice and judicial economy whenever such argument affords an opportunity to cure potential prejudice, we need not decide the question at this time. A review of the record now before us reveals that any supplemental argument by plaintiff's counsel would have proven futile, at best. Once counsel took an equivocal position on the question of whether decedent Lutren had stopped at the stop sign, he could no longer make an effective argument to the contrary.

■ Finally, defendant contends that plaintiff cannot raise error under Rule 51 on appeal because trial counsel failed to make an appropriate objection to the amended instructions. Even assuming that plaintiff's counsel did not object with sufficient specificity,[6] we decline to impose an objection requirement in this case. When a trial court initially refuses a request for an instruction and, after closing argument, completely reverses its decision, the court must be deemed aware that it is taking action which is objectionable to the party harmed by the modification. Therefore, an objection in such situation is a mere formality and does not serve the purpose of "[informing the] trial judge of possible errors so that he may have an opportunity to correct them." *5A Moore's Federal Practice* ¶ 51.04 (2d Ed.1948). The Seventh Circuit has held that "failure by trial courts to comply with the intent of Rule 51 . . . relieve[s] the party aggrieved thereby of the operation of the prohibition against asserting as error the giving of or failure to give an instruction to which objection has not been made." *Hetzel v. Jewel Companies, Inc.*, 457 F.2d 527, 536 (7th Cir. 1972). Although we do not adopt this holding as an absolute rule, we are persuaded that it should be followed in the present case.[7]

In the light of our findings and conclusions above, we do not decide the merits of plaintiff's other allegations of error.[8] The

---

6. "The Rule [F.R.Civ.P. 51] does not require formality, and it is not important in what form an objection is made or even that a formal objection is made at all, as long as it is clear that the trial judge understood the party's position; the purpose of the Rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them." *5A Moore's Federal Practice* ¶ 51.04 (2d Ed.1948).

7. A trial court's noncompliance with Rule 51 will not relieve an appellant of the obligation to object in every case. *See, e. g., Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1047 (7th Cir. 1974), wherein the Seventh Circuit stated:

The *Hetzel* remedy . . . of relieving an appellant from the restriction against asserting exceptions not timely taken would not be appropriate where the fault lies primarily with the party rather than the court.

8. Although we do not decide the issues, in view of our remand of the present case for a new trial, we provide the following remarks for guidance. First, Mich.Comp.Laws §§ 257.667 and 257.668 are not inconsistent statutory provisions. Second, a well-drafted instruction, delineating decedent's general duty of ordinary care as well as his specific duties under §§ 257.667 and 257.668, would be an appropriate instruction. Such instruction, however, should not unduly compound decedent's duties so as to confuse the jury. Finally, the statement contained in the instructions below— "plaintiff in turn has the burden of proving by a preponderance of the evidence that contributory negligence is not a defense in this case because the defendant had the last clear chance to avoid the accident"—is at best a misleading statement of the law.

judgment of the district court is reversed and the case is remanded for a new trial.