927 F.2d 606
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth Farrell WHITE, Plaintiff-Appellant,
v.
SOUTHERN RAILWAY COMPANY, Defendant-Appellee.
 No. 89-6307.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Tennessee, 88-00408, HULL, J.
 E.D.Tenn.
 AFFIRMED.
 Before WELLFORD* and ALAN E. NELSON, Circuit Judges; and JOINER**, Senior District Judge.
 PER CURIAM.
 
 
 1
 This case arises from a bizarre and tragic 1987 accident in which plaintiff, Kenneth F. White, concedes that he lay down between the rails of a track on which defendant, Southern Railway, operated, and was run over by the engine of a Southern train in Newport, Tennessee, rendering him a paraplegic. The district court had jurisdiction of this case by reason of diversity of citizenship. Plaintiff's theory[1] was that defendant had the last clear chance to avoid the accident and to avoid hitting him had the railroad employees operating the train kept a proper lookout on October 10 at "about 6:30 in the evening," and stopped the locomotive in time. White, who earlier that afternoon had been released from the local jail, had spent some time in a bar and several bottles of beer were found at the scene of the accident. Nowhere in the complaint does plaintiff allude to drunkenness or intoxication. Defendant's answer states, however, that "intoxication" is more appropriate than the word "unconscious" with respect to plaintiff's state at the time of the accident.
 
 
 2
 Defendant denied claims of negligent failure to warn, excessive speed under the circumstances, and generally, any failure to have operated or maintained the train in a careless or negligent manner, or in violation of any applicable laws, ordinances or rules.
 
 
 3
 At his pretrial discovery, plaintiff made the following responses to questions about his condition:
 
 
 4
 Q: Alright. Then you took down the railroad track and where were you going?
 
 
 5
 A: I was headed home, down the track.
 
 
 6
 Q: Alright. And you say you got swimmy headed?
 
 
 7
 A: Yeah.
 
 
 8
 Q: And you just got sleepy?
 
 
 9
 A: No, my head got to swimming and I set down.
 
 
 10
 Q: Okay. You were under the influence of alcohol at that time, were you not?
 
 
 11
 A: Yeah, I had drunk them four beers.
 
 
 12
 Q: And would it be fair to say that you were drunk?
 
 
 13
 A: No.
 
 
 14
 Q: You did have some beer with you at that time, didn't you?
 
 
 15
 A: No.
 
 
 16
 Q: Are you sure about that?
 
 
 17
 A: I'm positive.
 
 
 18
 Q: Okay, you sat down on the track, is that correct?
 
 
 19
 A: Yeah.
 
 
 20
 Q: You sat down on the rail?
 
 
 21
 A: No, I was sort of in the middle of it.
 
 
 22
 Q: You just sat on the crossties between the rails?
 
 
 23
 A: Yeah.
 
 
 24
 Q: And then you went to sleep or passed out or something?
 
 
 25
 A: I just got swimmy headed and that was the last thing I remember.
 
 
 26
 White could not say what time of afternoon it was when he lay down between the railroad tracks but stated he woke up when "it was about dusky dark." In his brief, his counsel concedes that "plaintiff admitted contributory negligence." He relies upon a violation of T.C.A. Sec. 65-12-108.[2] He concedes that his excessive speed claim was properly stricken prior to the jury trial.
 
 
 27
 Plaintiff's counsel then took the unusual step of moving for partial summary judgment "on the issue of whether plaintiff was helpless immediately before the accident for purposes of the Doctrine of Last Clear Chance," and to "limit any evidence concerning intoxication."[3] Defendant moved for summary judgment on the basis that plaintiff's own contributory negligence barred any recovery.
 
 
 28
 The issue presented by the several motions was whether plaintiff was intoxicated at the crucial time and whether he was able to "escape from his position of danger." Defendant was permitted to amend its answer to deny (instead of admit) that plaintiff was unconscious at the time, but plaintiff was permitted to call this change of position to the attention of the jury.[4]
 
 
 29
 At the conclusion of the proof, plaintiff moved for a directed verdict on the issue of his helplessness at and prior to the time he was run over, and defendant moved for a general directed verdict. The respective motions were overruled and the case was submitted to a jury which returned a verdict for the defendant. We affirm.
 
 
 30
 We consider the errors claimed on appeal. First, defendant claims that partial summary judgment should have been granted him to eliminate the prejudicial evidence about his intoxication. There is no question but that last clear chance, as well as general principles of negligence, apply to a person who may be "drunk" or "asleep" on railroad tracks in Tennessee. See Casteel v. Southern Ry. Co., 187 Tenn. 586, 216 S.W.2d 321 (1948); Tennessee Cent. R.R. Co. v. Brinkley, 127 Tenn. 77, 153 S.W. 59 (1912).
 
 
 31
 Plaintiff had the burden of establishing last clear chance and generally showing (a) inability "to avoid [harm] by the exercise of reasonable vigilance and care," and (b) defendant's negligence "in failing to utilize ... with reasonable care and competence [the] then existing opportunity to avoid the harm." Street v. Calvert, 541 S.W.2d 576, 584 (Tenn.1976). White also had the burden to show that defendant knew of "plaintiff's situation and realize[d] or ha[d] reason to realize the peril involved," or "would discover the situation ... if he were to exercise the vigilance which it was then his duty to the plaintiff to exercise." Id. at 584. Plaintiff concedes that defendant's alleged negligence and/or vigilance were jury issues; he contends that the district court should have held as a matter of law that he was helpless and unable to extricate himself from his peril on the railroad tracks.
 
 
 32
 Plaintiff, of course, was in the best position to know about his condition immediately before the accident. Whether or not he was entirely unconscious was noted as an issue in the pretrial order. Plaintiff's information given in respect to examination and treatment by two doctors indicated that he was not sure whether he had completely blacked out, whether he might have seen the train, and/or whether he was moving just before the accident. (A deposition of Egli, one of the train crew members, indicated that plaintiff may have moved as the train approached, brakes applied and whistle blowing). Comment C under Sec. 479 of Restatement of Torts (Second), dealing with the last clear chance doctrine, indicates that plaintiff "is required to exercise with reasonable attention, care, and competence only such ability as he then possesses." This would seem to indicate that some contributory fault on the part of a disabled or intoxicated plaintiff may have an adverse impact on his recovery. Under the circumstances, we find no error in the district court's overruling of plaintiff's partial summary judgment or directed verdict motion on plaintiff's unconsciousness, inability, or helplessness.[5]
 
 
 33
 Coupled with this pretrial motion, plaintiff sought an evidentiary ruling prior to trial to eliminate reference to plaintiff's drinking before the accident, and asserts it was error not to limit the proof with respect to intoxication. It is true that such evidence would be prejudicial and harmful to plaintiff's chances of success on the merits. Plaintiff again sought a ruling at the close of proof that he was helpless just before the defendant's locomotive came upon him. Again, we find no error in submitting this issue to the jury despite testimony by witnesses that plaintiff was observed not to be moving just before the accident. In our view, there was sufficient contradictory and confusing proof to make this a proper jury question.
 
 
 34
 Plaintiff argued before the district court that evidence concerning his drinking or his intoxication before the accident was not only prejudicial but irrelevant since he was asserting liability on the basis of last clear chance. White's deposition testimony admitted drinking but denied being drunk. Instead, he said he became "swimmy headed," and could not remember what happened while lying down between the tracks. Other statements, as heretofore indicated, were inconsistent with respect to what he was doing, whether he was aware of the train's approach, and his position of danger. We find no error in the district court's judgment that evidence of alcohol consumption on the afternoon of the accident was "relevant" to the issues in the case.
 
 
 35
 It is a closer question of the relevance of proof the prior day that White was arrested for driving while intoxicated. We are persuaded, however, that even if this evidence should not have been admitted as unduly prejudicial under Fed.R.Evid. 403, the error, if any, in its admission did not constitute reversible error.
 
 
 36
 As at common law, an appellate court reviewing a trial judge's decision to admit or exclude evidence on any of the grounds set forth in Rule 403 will generally affirm if the record reflects that there is any reasonable basis for the lower court's result, even if that basis was not articulated on the record.
 
 
 37
 American Bar Association, Section of Litigation, Emerging Problems Under The Federal Rules of Evidence 59 (1983). Plaintiff admitted at trial that he was under the influence of alcohol at a critical time before the accident. Cumulative evidence of intoxication the day before, while perhaps unnecessarily prejudicial, could not, in our view, have tainted the entire trial and this error, if any, was not reversible error.
 
 
 38
 There is yet another basis for our determination that evidence of intoxication was not erroneously admitted. The general rule concerning intoxication and contributory negligence and the relationship between the former condition and the latter legal principle is set out in Corpus Juris Secundum, 65A, Sec. 143:
 
 
 39
 The mere fact that a person was intoxicated at the time he was injured does not of itself constitute contributory negligence, but the fact that a person was intoxicated is a circumstance which may be considered in determining whether he exercised due care.
 
 
 40
 Inability to exercise the care which an ordinarily prudent sober person would exercise under the same or similar circumstances, although due to intoxication, must nevertheless contribute as a proximate cause to the injury complained of. Thus, a person is not guilty of contributory negligence where, although intoxicated, he exercises for his own safety the care which an ordinarily prudent person would have exercised under the circumstances, or where the circumstances were such that a sober man could not, by the exercise of ordinary care, have avoided injury.
 
 
 41
 (Footnotes omitted). We conclude that plaintiff's condition of having consumed alcohol before the accident was relevant and was a "circumstance" which was properly considered in determining the issues in this case subject to the requirements of Fed.R.Evid. 403.
 
 
 42
 Plaintiff contends also that the district court erred with respect to an assumption of the risk jury charge in this case. The proposed charge to this effect was submitted by defendant, objected to by plaintiff, and the district court initially indicated that assumption of risk would be submitted to the jury. The district judge changed his mind, however, and decided not to charge assumption of risk as an element of the case. Defendant's counsel erroneously stated in closing argument, nonetheless:
 
 
 43
 He's going to charge you that if Kenneth White assumed the risk, and that assuming the risk involves a voluntary assumption of a known reasons, that's entirely apart from contributory negligence, entirely apart from last clear chance, if Kenneth White chose to deposit himself on these railroad tracks knowing of the danger, knowing that trains ran on the tracks having worked at crossings for some employer at some point in time and knowing that trains hurt people; and if he made that choice and got on those tracks himself regardless of any last clear chance doctrine, he is barred from recovery. That's B-A-R, bar. He can't recover if he's guilty of assumption of risk.
 
 
 44
 Plaintiff argues that the court's "inadvertent" failure properly to advise the parties in a timely fashion that the assumption of risk defense would not be considered an issue brought about the improper defense argument and constituted "material prejudice." We agree with plaintiff that defendant's argument was confusing, and it was not supported by any charge from the court as defendant's counsel told the jury it would be. The court's charge on contributory negligence, indeed, was to the contrary:
 
 
 45
 Now, under Tennessee law every railroad company, railroad company is obligated to keep the engineer, fireman or some other person upon the locomotive always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down and every possible means employed to stop the train and prevent an accident.
 
 
 46
 Now, this statutory obligation is not excused in a situation where a man is drunk and lying in the railway.
 
 
 47
 .............................................................
 
 
 48
 ...................
 
 
 49
 * * *
 
 
 50
 In this case, the plaintiff acted negligently in lying in the railway used by the defendant's trains. Normally a plaintiff cannot recover against a defendant for his injuries if a jury finds that the plaintiff's own negligence proximately contributed to causing his injuries. An exception to this rule is provided under the doctrine of last clear chance.
 
 
 51
 Now, in considering last clear chance, you must first decide whether the plaintiff at the time of the accident was helpless. Now, a helpless plaintiff is one unable to remove himself from the dangerous position in which he placed himself. Now, a plaintiff who remains in a position to escape up to the point of the accident is not a helpless plaintiff.
 
 
 52
 .............................................................
 
 
 53
 ...................
 
 
 54
 * * *
 
 
 55
 Now, contributory negligence on the part of the plaintiff who has negligently placed himself in a position of danger will bar his recovery unless you find from the evidence that each of the following additional facts existed:
 
 
 56
 One, the plaintiff could not escape from his position of danger by the exercise of ordinary care; and, two, the defendant's employees knew or in the exercise of ordinary care would have known that the plaintiff was in a position of danger and realized or had reason to realize the danger and peril involved; and, three, that the defendant's employees thereafter had a clear opportunity to avoid the accident by the exercise of ordinary care but failed to avail themselves of such opportunity and that this failure was the proximate cause of the accident.
 
 
 57
 We believe that the court's jury instructions, considered in its entirety, on the question of negligence and contributory negligence was not in error. The district court, however, in light of defendant's argument about assumption of risk, a synonym in this situation for direct contributory negligence, should have admonished the jury to disregard defendant's argument in this respect. At the conclusion of the giving of instructions, plaintiff's counsel made the following observation:
 
 
 58
 MR. MAXWELL: I would just like the record to show that following the court's instructions we had a side bar; and in light of the fact that both parties, or the railway did argue assumption of risk and I addressed it in rebuttal, whether or not a limiting instruction should be given to the jury, the court thought it would be better not to.
 
 
 59
 THE COURT: I think you wanted me to limit, and I thought it would be in the best interest to just take the total charge as it was; and I think at least the defendant agreed to it and the plaintiff wasn't in whole-hearted agreement to it; but anyway, let it show that that did happen.
 
 
 60
 Plaintiff did not make a specific objection on the record to what had occurred. He now claims "material prejudice." See Estate of Lutren v. Chesapeake & Ohio R.R., 592 F.2d 941 (6th Cir.1979);[6] Bradshaw v. Thompson, 454 F.2d 75 (6th Cir.), cert. denied, 409 U.S. 879 (1972). Plaintiff must show that the error involved material prejudice and, in effect, constituted plain error under these circumstances. Estate of Lutren, 592 F.2d at 945; Bradshaw, 454 F.2d at 81. Here the plaintiff clearly admitted that he was negligent in placing himself upon the tracks; this was not the case in Estate of Lutren. We are not persuaded that material prejudice was demonstrated under the circumstances. Plaintiff's counsel, in rebuttal argument, adequately addressed this contention and the district court made it clear that if plaintiff carried his burden on the elements of the last clear chance doctrine, then the jury "must consider an award of damages."
 
 
 61
 Plaintiff read to the jury portions of discovery depositions of the members of defendant's train crew. He then sought to challenge their in-court testimony as inconsistent by reading against portions of their depositions and the district court, in several instances, would not allow this. While we do not approve these isolated rulings, there was no real prejudice to plaintiff demonstrated in the record. We find no basis for reversal in this respect.
 
 
 62
 Finally, plaintiff complains of defendant counsel's "prejudicial misconduct" during closing argument. First, he argues that defendant counsel gave his own personal views about credibility and actions of a witness or witnesses for defendant. We adhere to our admonitions in United States v. Bess, 593 F.2d 749 (6th Cir.1979), about conduct of counsel during closing argument. "[P]ersonal opinion of counsel has no place at trial." Id. at 754. Here we find no flagrant or persistent improper conduct, and plaintiff had the opportunity to object to correct the improper remark or remarks. He also had the opportunity to rebut to set the record straight. Defendant counsel's argument on the question of proximate cause may not have been entirely accurate, but the court's jury instructions on the key issues in the case made it clear what the jury was to decide and were not erroneous as to proximate cause and last clear chance. While it was not an argument we encourage, and it may, in fact, have been one involving a risk of turning the jury against defendant, we find no reversible error in the argument that the unfortunate plaintiff was the "author of the misfortune" that befell him. Plaintiff's counsel argues in the last clear chance situation "the negligent plaintiff is always the author of his misfortune" in the sense of placing himself in a position of danger. Of course, the helpless plaintiff in a position of danger may not necessarily have been negligent in placing himself in that spot. The determinative question put to the jury was whether or not defendant was negligent in failing to avoid the accident under all the circumstances.
 
 
 63
 We find no reversible error; therefore, we AFFIRM the decision of the district court.
 
 
 64
 CHARLES W. JOINER, Senior District Judge, dissenting.
 
 
 65
 I dissent from the majority opinion because in my opinion the trial judge committed errors that prevented the plaintiff from having his claims fairly heard by the jury. The cumulative impact of the numerous prejudicial errors in this matter deprived the plaintiff of the opportunity to present the simple question of whether the defendant was liable for plaintiff's injuries under the doctrine of "last clear chance."
 
 I.
 
 66
 This case was pleaded and tried on the theory of last clear chance. The elements of that doctrine are stated in "Tennessee Pattern Instruction 4.10" as follows:
 
 
 67
 1. That the plaintiff could not escape from his position of danger by the exercise of ordinary care;
 
 
 68
 2. That the defendant knew that the plaintiff was in a position of danger and realized or had reason to realize the peril involved; or that the defendant, if he had exercised the care it was his duty to the plaintiff to exercise, would have known of the plaintiff's danger and realized the peril involved; and,
 
 
 69
 3. That the defendant thereafter had a clear opportunity to avoid the accident by the exercise of ordinary care but failed to avail himself of such opportunity and such failure was the proximate cause of the accident.
 
 
 70
 (App. at 29). The errors of the trial court that prevented the fair presentation of the case to the jury relate to the first element, whether the plaintiff could escape from his position of danger by the use of ordinary care. There are several erroneous rulings relating directly to this issue that cumulatively require reversal.
 
 
 71
 Prior to trial plaintiff asked the court to rule that there was no genuine issue as to the fact that the plaintiff was unconscious and therefore unable to avoid the injury by the exercise of reasonable vigilance and care. The majority is correct when it asserts that denial of summary judgment motions may be raised on appeal from the final judgment. The record presented by the parties relating to this motion shows that there was no dispute about the condition of the plaintiff at that time. He was an unconscious drunk lying helplessly on the tracks of the approaching train. There is not only no support for the ruling of the district court to the effect that "all the elements of the claim must be put to the jury--including whether or not the plaintiff was, in fact, helpless," it was error. Nothing is suggested in the opinion of the court to show any dispute on this issue so as to buttress the assertion that the plaintiff was not helpless.
 
 
 72
 The only explanation regarding the court's holding in its opinion is the statement, later admitted by the trial judge to be in error, that "[e]ven if the jury does find the plaintiff has met his burden of proof [that he could not escape from his position of danger in the exercise of ordinary care] it is entitled to consider his negligence (as remote contributory negligence) in mitigation of damages." Since the purpose of asking for a summary judgment on this issue was to remove from the consideration of the jury the issue of the wrongdoing, bad action or negligence of the plaintiff prior to the plaintiff's becoming unconscious, this latter ruling magnified the error. The whole purpose of the last clear chance doctrine is in this limited area--plaintiff's helplessness and defendant's ability to avoid the harm. The doctrine prevents the plaintiff's negligence prior to his helplessness from barring recovery.
 
 
 73
 This case is a classic classroom case that should be used to demonstrate the value of the partial summary judgment. We have here a claim involving three elements, the cause of the first of which involved conduct not in accordance with the societal norm--being unconscious and drunk in the middle of railroad tracks. Except for the law that says that the cause of the unconsciousness and helplessness is not relevant to plaintiff's claim of last clear chance, this would, in most persons' minds, be extremely prejudicial to a claim for damages. Therefore the law directed that on request the trial judge should have considered whether there was really any dispute about whether the plaintiff had established the first element of the last clear chance case [helplessness], by means of his summary judgment ruling. If there is no evidence shown contrary to an assertion (as there was none shown on this issue involving highly-charged evidence), it is not tried to the jury and evidence is not received on it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 II.
 
 74
 The erroneous denial of partial summary judgment on the issue of helplessness resulted directly in the reversible error, in my view, of admission of evidence of an arrest for drunk driving on the day before the accident, which was repeatedly referred to at trial. Plaintiff filed a motion in limine to exclude references to the arrest (as well as plaintiff's drinking in general). The magistrate to whom the motions in limine were assigned for resolution issued an order stating:
 
 
 75
 In this personal injury lawsuit, the plaintiff seeks to recover solely under the doctrine of last clear chance. In the Court's prior Order [Doc. 23] which addresses this subject, the Court stated its intent to charge the jury on the last clear chance doctrine as done in Tennessee Pattern Instruction 4.10, which lists the three elements of this theory. The first of these three elements is that the plaintiff must prove that he could not escape from his position of danger by the exercise of ordinary care. The undersigned opines that the evidence of plaintiff's arrest and charge of driving while intoxicated on the day prior to the accident is relevant to this element.
 
 
 76
 The defendant's attorney stated, in his oral argument before the undersigned, that this arrest was not being introduced for purposes of showing prior bad acts of the plaintiff but was being introduced in an attempt to convince the jury that the plaintiff was intoxicated for twenty-four hours prior to the wreck; that upon his release from the jail at 1:00 on the day in question, he was intoxicated and consumed more alcoholic beverage, thus remaining in a state of intoxication; and that this evidence is relevant to the question of whether the plaintiff was sober or intoxicated at the time of the accident. The undersigned agrees and opines that this evidence is relevant to the issue of the plaintiff's ability to escape from his position of danger by the exercise of ordinary care.
 
 
 77
 (App. at 53-54). This, of course, should all be error, because the trial judge's ruling on the motion for partial summary judgment was erroneous. Even so, it is difficult to believe that this was serious. The arrest and the degree of plaintiff's intoxication the next day have no logical relationship. The magistrate's assertion that plaintiff's drunk driving arrest of the day before was relevant to the plaintiff's "ability to escape from his position of danger by the exercise of ordinary care," is obviously lacking in foundation. One of the clear indications of the prejudice which permeated this trial is the fact that the defendant emphasized the plaintiff's drunkenness throughout the trial as well as the drunk driving arrest. This is not a case where the trial court (or magistrate, as the case may be) is entitled to deference for Rule 403 "balancing." Even putting to one side the degree to which the drunk driving arrest was prejudicial, it had no probative value whatsoever.
 
 III.
 
 78
 Plaintiff also properly assigns as error (1) the trial judge's failure to inform counsel prior to final arguments, as required by Fed.R.Civ.P. 51, that assumption of risk would not be charged, and (2) the references to assumption of risk in defendant's closing arguments. Assumption of risk relates to plaintiff's negligence, and plaintiff's negligence is, as the majority notes, admitted under a last clear chance theory, and not a bar. Arnold v. Hayslett, 655 S.W.2d 941 (Tenn.1983). The defendant's counsel repeatedly told the jury in final arguments that plaintiff's negligence would bar his recovery. The trial court did not give a limiting instruction, although the court did tell the jury to follow the instructions given, which (except as to the first element, discussed below) properly stated the elements of the last clear chance doctrine.
 
 
 79
 The trial in its entirety, and particularly the way in which the defendant was permitted to present its case, went far afield from matters relevant to plaintiff's last clear chance claim. The defendant was allowed to elicit testimony on the same prejudicial and irrelevant matters again and again, despite the plaintiff's efforts by motions and objections to keep the focus of the trial on whether or not the defendant's employees had been negligent in moments when only they could have averted the accident which occurred. Not just the defendant's closing argument, but the parameters of the testimony permitted at trial suggested to the jury that the plaintiff's negligence was relevant, and in fact, decisive.
 
 
 80
 Proper objection was made to defense counsel's closing arguments and the court's failure to give a limiting instruction. The transcript of the closing argument of the defense shows the following:
 
 
 81
 MR. LAYMAN [defense counsel]: HIS HONOR IS GOING TO CHARGE YOU ABOUT PROXIMATE CAUSE. HE'S GOING TO TELL YOU THAT THAT'S WHAT--THAT THAT'S THE CAUSE THAT CAUSED THIS ACCIDENT, AND I SUBMIT TO YOU FOLKS THAT KENNETH WHITE BEING DRUNK ON THESE TRACKS AND NOT GETTING HIMSELF OFF AND NOT ANYTHING THAT [the engineer] DID IS THE PROXIMATE CAUSE OF THIS ACCIDENT.
 
 
 82
 MR. MAXWELL [plaintiff's counsel]: YOUR HONOR, I'VE GOT TO NOTE AN OBJECTION TO THAT.
 
 
 83
 (App. 145). In addition to this objection to defense counsel's characterization of the case, the transcript of the sidebar following the jury's instruction and departure to begin deliberations records plaintiff's counsel's objection to the court's instructions:
 
 
 84
 MR. MAXWELL [plaintiff's counsel]: I WOULD JUST LIKE THE RECORD TO SHOW THAT FOLLOWING THE COURT'S INSTRUCTIONS WE HAD A SIDE BAR; AND IN LIGHT OF THE FACT THAT BOTH PARTIES, OR THE RAILWAY DID ARGUE ASSUMPTION OF RISK AND I ADDRESSED IT IN REBUTTAL, WHETHER OR NOT A LIMITING INSTRUCTION SHOULD BE GIVEN TO THE JURY, THE COURT THOUGHT IT WOULD BE BETTER NOT TO.
 
 
 85
 THE COURT: I THINK YOU WANTED ME TO LIMIT, AND I THOUGHT IT WOULD BE IN THE BEST INTEREST TO JUST TAKE THE TOTAL CHARGE AS IT WAS....
 
 
 86
 (App. 198). Plaintiff should be entitled to a new trial. It is apparent from the record that the evidence and arguments presented to the jury were hopelessly confused and confusing, at least as to the elements of plaintiff's claim. The jury received a coherent narrative on only the prejudicial and irrelevant matters, which predominated. The plaintiff, and not his case, was tried in this proceeding, and he lost.
 
 
 87
 I disagree with the assertion of the majority that the evidence did not show a close question, but more importantly, I do not think it possible to objectively evaluate plaintiff's case based upon guesses as to what plaintiff's proofs would have looked like had plaintiff been given a fair opportunity to present them, and what a jury would have done if squarely presented with the elements of the last clear chance claim instead of a colorful jumble of irrelevancies. There is a distinction to be drawn between cases where it is possible to discount proportionately for evidence erroneously admitted, and cases such as the present where the effect of the evidence is impossible to assess, because it is wholly prejudicial and without logical relevance to the matter at issue. In Kotteakos v. United States, the Supreme Court observed:
 
 
 88
 [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.
 
 
 89
 328 U.S. 750, 765 (1946); United States v. Lane, 474 U.S. 438, 449 (1985). This caution applies in civil actions as well. 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE Sec. 2883 (1973) (in civil cases, "[e]rror cannot be regarded as harmless merely because the trial judge or the appellate court thinks that the result that has been reached is correct"). I think that this is not one of the cases in which the plaintiff's claim had no support in the evidence. The record indicates that relevant questions were shunted aside to such a degree that it is impossible to tell what the answers should have been. This plaintiff had a right to recover if he could show that the negligence of defendant's employees threw away the last clear chance to save him from harm. It is clear to me that he was deprived of an opportunity to pose that simple question.
 
 
 
 *
 Judge Wellford assumed senior status effective January 21, 1991
 
 
 **
 THE HONORABLE CHARLES W. JOINER, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Plaintiff expressed his situation in this fashion: "plaintiff became prostrate on the railroad tracks in a state of unconsciousness."
 
 
 [2]
 T.C.A. Sec. 65-12-108(4) provides:
 Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout head; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.
 
 
 [3]
 White was arrested the day prior to the episode at issue for driving while intoxicated
 
 
 [4]
 Plaintiff objected to this amendment
 
 
 [5]
 Southern Railway also points out evidence of a recently consumed bottle of beer, along with other bottles or cans at the scene, indicating that plaintiff was conscious and drinking before the accident. Plaintiff testified at trial that he had drunk four beers and was not conscious when struck
 
 
 [6]
 "A trial court's noncompliance with Rule 51 will not relieve an appellant of the obligation to object in every case." Estate of Lutren, 592 F.2d at 946 n. 7